UNITED STATES, Appellee

v.

Christopher J. ROBERTS, Staff Sergeant
U.S. Air Force, Appellant

No. 10-0030

Crim. App. No. 36905

United States Court of Appeals for the Armed Forces

Argued January 13, 2010

Decided May 13, 2010

ERDMANN, J., delivered the opinion of the court, in which
EFFRON, C.J., and BAKER, STUCKY, and RYAN, JJ., joined.

Counsel

For Appellant:  Major Darrin K. Johns (argued); Colonel James B.
Roan and Major Shannon A. Bennett (on brief).

For Appellee:  Captain Jamie L. Mendelson (argued); Colonel
Douglas P. Cordova, Lieutenant Colonel Jeremy S. Weber, and
Gerald R. Bruce, Esq. (on brief).

Military Judge:  Gary M. Jackson

**This opinion is subject to revision before final publication.**

United States v. Roberts, No. 10-0030/AF

Judge ERDMANN delivered the opinion of the court.

Staff Sergeant Christopher J. Roberts pleaded guilty to one specification of assault consummated by a battery upon his wife (ER) and not guilty to the following three specifications:  a separate assault consummated by a battery upon ER; the rape of ER; and communicating a threat to ER.  A military judge sitting as a general court-martial found him guilty of all charges.  The United States Air Force Court of Criminal Appeals affirmed the findings and the approved sentence.[1]  United States v. Roberts, No. ACM 36905, 2009 CCA LEXIS 251, at *21, 2009 WL 2209206, at *7 (A.F. Ct. Crim. App. July 24, 2009).

Generally, evidence of a victim's past sexual behavior is inadmissible in a sexual offense case under Military Rule of Evidence (M.R.E.) 412.  The purpose of the rule is to "shield victims of sexual assaults from the often embarrassing and degrading cross-examination and evidence presentations common to prosecutions of such offenses."  Manual for Courts-Martial, United States, Analysis of the Military Rules of Evidence app. 22 at A22-35 (2008 ed.).  There are three exceptions to this general rule of exclusion, the third of which allows the admission of evidence if "the exclusion of which would violate

---

[1] Roberts was sentenced to a dishonorable discharge, four years of confinement, forfeiture of all pay and allowances, reduction to E-1, and a reprimand.  The convening authority approved the sentence, but suspended a portion of the forfeitures and waived

2

the constitutional rights of the accused." M.R.E. 412(b)(1)(C).

We granted review in this case to determine whether the military judge erred in excluding evidence of ER's relationship with another man (FL), evidence that Roberts asserts would have established a motive for ER to fabricate the rape allegation against him.[2]

We agree with the Court of Criminal Appeals that under the circumstances presented in this case, the proffered evidence of ER's alleged sexual relationship with FL was not admissible under M.R.E. 412. 2009 CCA LEXIS 251, at *7, 2009 WL 2209206, at *3. We also agree with the lower court that the military judge erred in limiting the cross-examination of ER concerning the general relationship between ER and FL and specifically by not allowing any cross-examination of ER as to her cell phone call to FL immediately after the incident. 2009 CCA LEXIS 251, at *8, 2009 WL 2209206, at *3. However, we find those errors to

---

the automatic forfeitures for six months for the benefit of Roberts's wife and the three children.
[2] We granted review of the following issue:

> Whether the military judge's denial of Appellant's Sixth Amendment right to confront a witness against him was harmless error when the judge prohibited Appellant from demonstrating that his wife, the alleged rape victim, had a motive to fabricate the issue of consent based on her extramarital romantic relationship that gave her an incentive to either get Appellant out of the picture or protect her extramarital relationship.

be harmless beyond a reasonable doubt and affirm the lower

court.

### Background

Roberts and ER started having marital problems before he

was deployed to Iraq and those problems continued during and

after his deployment, which resulted in the couple contemplating

divorce. Roberts was convinced that ER was having an affair,

although he initially did not know with whom. The charges

against Roberts arose out of an incident that occurred shortly

after he returned from his deployment. One night ER's cell

phone rang after she had gone to sleep and when Roberts answered

it, the caller would not identify himself. Roberts then called

the number back but the caller still would not identify himself.

Roberts later learned that the individual was FL.

Roberts woke ER and confronted her with the phone call and

asked her who the caller was. When ER responded that it was

nobody -- just a friend, Roberts became "angry and outraged" and

started to choke her.[3] Following the choking incident Roberts

and ER had sexual intercourse. ER claimed that she was raped

while Roberts claimed that they had "rough," but consensual

---

United States v. Roberts, 68 M.J. 240 (C.A.A.F. 2009) (order
granting review).

[3] This incident provided the basis for the assault consummated by
a battery specification to which Roberts pleaded guilty.

intercourse. ER testified that during the rape Roberts was yelling at her to "shut up," that she "deserved it," that she "needed to take it," and that "he wanted to hurt [her] like [she] hurt him." ER also testified that during the rape Roberts told her that she couldn't tell anyone and if anybody did find out, he was going to kill her. Expert medical testimony and photographs taken after the incident documented multiple injuries to ER, including injuries to her cervix, chest, wrist, forearm, side, leg, face, mouth, ear, and neck.

After the sexual intercourse, ER testified that she got dressed and picked up their youngest child from her crib. Roberts took the child from her and shoved her down the hall, telling her to get out of his house.[4] ER went to a nearby park where she made and received several cell phone calls. When asked on cross-examination if she spoke with FL on her cell phone while at the park, trial counsel objected based on a lack of relevance and the military judge sustained the objection. ER testified that she then went to Roberts's supervisor's house where she reported the incident for the purpose of getting Roberts out of the house.

The defense filed a M.R.E. 412 notice requesting that the military judge permit the introduction of evidence concerning an alleged relationship between ER and FL for the purpose of

attacking ER's credibility and to demonstrate her bias and motive to lie.  The defense theory was that ER's motive to fabricate the rape was to get Roberts out of the house in order to protect her relationship with FL.

The military judge held an evidentiary hearing on Roberts's M.R.E. 412 motion.  To establish ER's motive to fabricate her story, Roberts sought to introduce evidence of a relationship between ER and FL in several forms:

1.  The back room incident.[5]  Roberts wanted to call DT as a witness at trial to testify that he had accompanied FL to a house where a woman who shared ER's first name resided.  During the M.R.E. 412 hearing, DT testified that the woman and FL spent 1½-2 hours in a back room of the house while DT sat in the living room and watched TV.  It was DT's impression that they were having sex.  DT could not recall the location of the house other than that it was in Valdosta, Georgia, but he did testify that he and FL had to be escorted to the house.[6]  While DT could not identify ER as the woman at the house, he did testify that there were photographs of that woman and Roberts in the house.  DT did not know Roberts at the time of his visit to the house, but prior to trial he had been incarcerated with Roberts.  He admitted at the M.R.E. 412 hearing that he had lied to the trial counsel about whether he was guilty of possessing marijuana, which he had pled guilty to before a civilian judge.

2.  Testimony of a sexual relationship.  Roberts wanted to call his ex-wife, LH, to testify that FL and ER had a sexual relationship.  LH testified at the

---

[4] This incident provided the basis for the second assault consummated by a battery specification.
[5] While the military judge and the Court of Criminal Appeals refer to a "bedroom," the testimony at the M.R.E. 412 hearing only referred to it as a "back room."
[6] Appellant's quarters were located on Moody Air Force Base, which is in Valdosta, Georgia.

> M.R.E. 412 hearing that FL had told her that he and ER had been "spending a lot of time together" and she interpreted that to mean that they had a sexual relationship. LH knew FL well and they had a child together.

3. <u>Weekend in Florida</u>. Roberts also sought to introduce evidence that while he was deployed in Iraq, ER and FL took a weekend trip to Florida together. While Roberts did not introduce evidence of this trip at the M.R.E. 412 hearing, the Government did concede at that hearing that ER admitted that she went to Florida with FL but denied that they spent the night together.

The military judge made the following findings of fact related to the above evidence:

> g. There is no credible evidence that the accused was deployed nor evidence that while the accused was deployed, [ER] allowed [FL] into her home and into her bedroom with the door closed for a period of several hours. Specifically, the court notes that the only witness on this issue -- [DT]: does not know and cannot identify [ER] as the [person] he allegedly met on the one occasion during the September-October 2005 timeframe; he does not know and cannot say whether he has ever visited the alleged scene of the tryst -- the Roberts' on-base residence; and, more importantly, he, having been caught in a lie on the stand and admittedly lying to trial counsel during a pretrial interview, lacks credibility on this issue;

> h. There is no evidence that the accused was deployed nor while the accused was deployed that [ER] and [FL] took a weekend trip to Florida together;

> . . . .

> l. There is no credible evidence that in early February 2006, [LH] received a phone call from [FL] wherein he related that he had a romantic and/or sexual relationship with [ER]. Specifically, the court notes that when questioned [LH] asserted that at no time did [FL] tell her he was involved in a romantic and/or sexual relationship with [ER] and she simply assumed he was based on his use of the phrase "spending time with her."

7

United States v. Roberts, No. 10-0030/AF

The military judge denied the M.R.E. 412 motion on the basis that the proffered evidence was not relevant as there was no credible evidence as to any of the allegations. We review a military judge's decision to admit or exclude evidence for an abuse of discretion. United States v. Ayala, 43 M.J. 296, 298 (C.A.A.F. 1995). In doing so, we review findings of fact under a clearly erroneous standard and conclusions of law under a de novo standard. Id.

We note that the proffered evidence as to the "back room incident" and the "sexual relationship" both contained allegations of ER's prior sexual behavior and were therefore appropriate for a M.R.E. 412 analysis. The "Florida trip" allegation, however, merely alleged that ER and FL traveled to Florida together but contained no direct allegation or evidence of a sexual relationship. As no evidence was offered by Roberts to prove that ER engaged in sexual activity with FL during the Florida trip, those allegations fell outside the scope of M.R.E. 412.[7]

---

[7] In light of the Government's evidentiary concession for purposes of the M.R.E. 412 motion, the military judge, in his gatekeeping role, erroneously ruled that there was no evidence presented of the Florida trip. During the presentation of evidence on the merits, however, that evidence was offered by the Government and admitted without objection through the DVD of Roberts's interview with the Office of Special Investigations (OSI). Evidence of a relationship between ER and FL was therefore before the military judge as factfinder. We assume that military judges know the law and there is no indication that the military judge did not consider the evidence once it

8

## Discussion

### M.R.E. 412 Evidence

Except as otherwise provided in M.R.E. 412, evidence of a victim's sexual behavior is inadmissible in trials by court-martial. M.R.E. 412(a). As a rule of exclusion, the burden of demonstrating why the general prohibition of M.R.E. 412(a) should have been lifted was on Roberts. United States v. Banker, 60 M.J. 216, 222 (C.A.A.F. 2004) (citing United States v. Moulton, 47 M.J. 227, 228 (C.A.A.F. 1997)). In his attempt to meet this burden at trial, Roberts relied on M.R.E. 412(b)(1)(C), which provides an exception to the general rule of exclusion if the evidence sought to be admitted is otherwise admissible under the rules and is "evidence the exclusion of which would violate the constitutional rights of the accused."

In order to properly determine whether evidence is admissible under the constitutionally required exception to M.R.E. 412(a), the military judge must evaluate whether the evidence is relevant, material, and favorable to the defense. Banker, 60 M.J. at 222. Evidence is relevant if it has "any tendency to make the existence of any fact . . . more probable or less probable than it would be without the evidence." M.R.E.

---

was properly admitted. United States v. Martinez, 65 M.J. 431 (C.A.A.F. 2007) (summary disposition) ("'[M]ilitary judges are presumed to know the law and follow it absent clear evidence to the contrary.'" (quoting United States v. Erickson, 65 M.J. 221, 225 (C.A.A.F. 2007))).

9

401. "In determining whether evidence is material, the military judge looks at 'the importance of the issue for which the evidence was offered in relation to the other issues in this case; the extent to which this issue is in dispute; and the nature of the other evidence in the case pertaining to this issue.'" Banker, 60 M.J. at 222 (quoting United States v. Colon-Angueira, 16 M.J. 20, 26 (C.M.A. 1983)). Finally, if the military judge determines that the evidence is relevant and material, he then performs the M.R.E. 412(b)(3) balancing test (whether the probative value of the evidence outweighs the danger of unfair prejudice to the victim's privacy) to determine whether the evidence is favorable to the accused's defense.[8] Id. at 223.

At the M.R.E. 412 hearing the military judge found that the evidence proffered by Roberts as to the "back room incident" and the "sexual relationship" was not relevant because no credible evidence had been presented. "In applying M.R.E. 412, the judge is not asked to determine if the profered evidence is true . . . . Rather, the judge serves as gatekeeper deciding first whether the evidence is relevant and then whether it is otherwise competent, which is to say, admissible under M.R.E. 412." Id. at 224. To the degree the military judge weighed the

---

[8] In addition to considering the prejudice to the victim's legitimate privacy interests, the military judge must also

credibility of DT and LH in performing his relevancy analysis under M.R.E. 412, he abused his discretion and his findings were clearly erroneous. In addition, given the low threshold for relevant evidence, the military judge's conclusion that the testimony of DT and LH was not relevant was also error.

As the application of M.R.E. 412 to proffered evidence presents a legal issue that we review de novo, we can perform the analysis at this level. See United States v. Dorsey, 16 M.J. 1 (C.M.A. 1983). However, even if we were to assume that the proffered evidence was relevant and material, its exclusion was ultimately proper as the probative value of the evidence did not outweigh the danger of unfair prejudice to ER's legitimate privacy interests under the M.R.E. 412 balancing test. Banker, 60 M.J. at 223.

LH's testimony of ER's alleged sexual relationship with FL was pure conjecture based upon her impression of an innocuous hearsay statement by FL. LH testified that it was her "impression" that ER and FL were having a sexual relationship based on FL's statement that he and ER were "spending a lot of time together." As noted during the cross-examination of LH, FL never told LH that he was having sex with ER, nor did he use any euphemism for sex.

---

consider the M.R.E. 403 balancing factors. Banker, 60 M.J. at 223.

11

As to the "back room incident," DT's testimony had a low probative value. He did not know if the house he was in was ER's, nor could he identify ER as the woman in the house. He could not even identify where the house was located, other than in Valdosta. DT did not testify that FL and the woman went into a "bedroom," but rather testified that they went into a "back room" where it was his impression that they were having sex.

In weighing the probative value of the proffered evidence it is helpful to note the purpose for which the evidence was offered. Here Roberts sought to introduce evidence of a sexual relationship between ER and FL to support his theory that ER fabricated the rape allegation in order to get him out of the house so that she could protect that relationship. The evidence, however, established that Roberts had already asked ER for a divorce. If ER was seeking to end her relationship with Roberts, she simply could have acquiesced to the divorce rather than fabricate a rape allegation. Although we assume that DT's and LH's testimony was true, its speculative nature when combined with the improbability of the underlying purpose for the admission of the evidence, leads us to conclude that the proffered testimony had minimal probative value.

In balancing this low probative value against the danger of unfair prejudice to the legitimate privacy interests of ER, we agree with the Court of Criminal Appeals that this evidence is

precisely the type of evidence that M.R.E. 412 was designed to exclude.  2009 CCA LEXIS 251, at *7, 2009 WL 2209206, at *3.  Both witnesses' allegations as to the alleged sexual activity between ER and FL were based upon speculation and conjecture.[9]  Accordingly, we conclude that Roberts did not meet his burden of demonstrating that the probative value of the proffered evidence outweighed the danger of unfair prejudice to ER's legitimate privacy interests.  Excluding the evidence of the alleged sexual relationship and the back room incident did not violate Roberts's constitutional right to confrontation.

Limitation on Cross-Examination of ER

Finally we consider whether the lower court correctly concluded that the military judge erred in limiting the cross-examination of ER, but that the errors were harmless beyond a reasonable doubt.  2009 CCA LEXIS 251, at *8-*13, 2009 WL 2209206, at *3-*4.  Roberts wanted to establish that ER's relationship with FL was a motive for her to fabricate her allegation of rape against him.  As part of that effort, Roberts wanted to cross-examine ER generally as to her relationship with FL and specifically as to the phone conversation she had with FL immediately after the incident.  The military judge did not

---

[9] We also note that the evidence may have been excluded pursuant to M.R.E. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").  See also United States v. Bush, 68 M.J. 96, 100 (C.A.A.F. 2009).

13

United States v. Roberts, No. 10-0030/AF

permit Roberts to pursue this line of questioning even though questions concerning ER's relationship with FL that did not involve sexual behavior allegations would not implicate the exclusionary rule of M.R.E. 412.  Cross-examination of the Government's primary witness may have established a motive for ER to fabricate her allegation of rape.  See Dorsey, 16 M.J. at 4; see also M.R.E. 608(c).  We therefore agree with the CCA that the military judge erred in excluding this cross-examination.

To determine whether an error was harmless beyond a reasonable doubt, this court applies the five-part balancing test articulated by the Supreme Court in Delaware v. Van Arsdall, 475 U.S. 673 (1986).

> [T]he importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course the overall strength of the prosecution's case.

United States v. Collier, 67 M.J. 347, 356 (C.A.A.F. 2009) (quoting Van Arsdall, 475 U.S. at 684).

(1)  The importance of the witness's testimony:  ER's testimony as the victim of the offenses was critical to the prosecution's case.  She was the only witness to the incident other than Roberts and as such her credibility was essential.  This factor weighs in favor of Roberts.

(2) <u>Whether the testimony was cumulative</u>:  There was other evidence admitted as to the relationship between ER and FL.  In addition to ER's testimony concerning the telephone call that was the catalyst for the assault and rape incidents, Roberts's DVD statement in which he discussed the weekend trip to Florida and his belief that ER was having an affair was admitted into evidence.  Roberts's neighbor also testified that Roberts told him that he had caught ER cheating on him.  Although Roberts was not allowed to cross-examine ER as to her relationship with FL, there was other evidence in the record that established a relationship between the two.  This factor weighs slightly in favor of the Government.

(3) <u>The presence or absence of evidence corroborating or contradicting the testimony of the witness on material points</u>: The pretrial DVD interview of Roberts by the OSI provided corroboration of ER's testimony and much of her account of the rape.  Roberts admitted that he became angry after the telephone call from FL.  He admitted that he forcefully held the blanket over ER's head during the sexual intercourse and told her that since she had hurt him, he was going to hurt her.  He also admitted that ER accused him of rape shortly after the incident.  Significantly, the evidence of ER's extensive physical injuries corroborated her testimony.  This factor weighs in favor of the Government.

(4) The extent of cross-examination otherwise permitted: Attempting to minimize the inference to be drawn from ER's injuries, Roberts's defense counsel thoroughly cross-examined ER and the Government's expert in sexual assault examination about ER's history of vaginal bleeding and her increased susceptibility to injury due to an abnormal friable cervix, anemia, and other medical issues.[10] Although ER was also cross-examined extensively by the defense counsel on the substance of the offenses alleged, cross-examination of ER concerning any relationship with FL (including the telephone conversation with FL while ER was at the park immediately after the incident) was not allowed. This factor weighs in favor of Roberts.

(5) The overall strength of the prosecution's case: The Government's case against Roberts was strong. The pretrial DVD interview of Roberts by the OSI was consistent with much of ER's testimony and was admitted into evidence without objection. As part of that interview, Roberts specifically admitted choking ER, telling her moments before the sexual intercourse that he was going to hurt her, and that he had "rough" sex with her

---

[10] The effectiveness of the cross-examination of ER as to her history of vaginal bleeding during normal intercourse was diminished by Roberts's assertion that the couple had "rough" sex after the assault. We also note that while Roberts's defense was based in part on the assertion that the couple had a history of consensual "rough" sex, the only evidence on this issue in the record is ER's denial of ever having engaged previously in "rough" sex with Roberts.

United States v. Roberts, No. 10-0030/AF

while holding her down with a blanket over her head.  The Government presented a neighbor who testified that Roberts admitted to him that "He had jumped [ER]."  As noted, Roberts admitted that ER accused him of rape shortly after the incident. In addition, the Government presented extensive evidence supporting the violent nature of the incident and the resulting injuries suffered by ER.[11]  This factor weighs heavily in favor of the Government.

Balancing the strength of the factors set out in Van Arsdall, we conclude that the military judge's errors were harmless beyond a reasonable doubt.

### Summary

The military judge did not abuse his discretion in excluding evidence of the "back room incident" and the allegation of a sexual relationship between ER and FL under M.R.E. 412.  While the military judge did err in limiting cross-examination of ER as to her relationship with FL and specifically her cell phone call with FL immediately after the incident, under the Van Arsdall factors those errors were harmless beyond a reasonable doubt.

---

[11] The Government presented testimony of the sexual assault nurse examiner and multiple photographs of ER's injuries.

## Conclusion

The decision of the United States Air Force Court of Criminal Appeals is affirmed.