# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39014**

———————————

**UNITED STATES**
*Appellee*

v.

**Paul L. LEONHARDT**
Second Lieutenant (O-1), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 16 August 2017

———————————

*Military Judge:* L. Martin Powell (arraignment); Vance H. Spath.

*Approved sentence:* Dismissal and confinement for 5 months. Sentence adjudged 11 December 2015 by GCM convened at Eielson Air Force Base, Alaska.

*For Appellant:* Terri R. Zimmermann, Esquire (argued); Major Mark C. Bruegger, USAF; Jack B. Zimmermann, Esquire.

*For Appellee:* Major Meredith L. Steer, USAF (argued); Major Collin F. Delaney, USAF; Major Jeremy D. Gehman, USAF; Major Mary Ellen Payne, USAF; Gerald R. Bruce, Esquire.

Before MAYBERRY, JOHNSON, and SPERANZA, *Appellate Military Judges.*

Senior Judge JOHNSON delivered the opinion of the court, in which Senior Judge MAYBERRY and Judge SPERANZA joined.

———————————

**PUBLISHED OPINION OF THE COURT**

———————————

JOHNSON, Senior Judge:

A general court-martial composed of officer members found Appellant guilty, contrary to his pleas, of one specification of sexual assault[1] and one specification of abusive sexual contact in violation of Article 120 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920. The court-martial sentenced Appellant to a dismissal and confinement for five months. The convening authority approved the adjudged sentence but waived the mandatory forfeiture of pay for the benefit of Appellant's spouse and dependent child.

On appeal, Appellant raises four assignments of error: (1) the military judge erred in excluding evidence of other sexual behavior between the victim and Appellant offered by the Defense pursuant to Military Rule of Evidence (Mil. R. Evid.) 412; (2) the military judge erred by not releasing certain mental health records of the victim he had reviewed in camera pursuant to Mil. R. Evid. 513; (3) senior trial counsel committed plain error in his argument to the court members on findings; and (4) the victim impact statement provided to the court members in sentencing included improper aggravation evidence. Because we find the military judge abused his discretion with respect to the first issue, and we cannot say that error was harmless beyond a reasonable doubt, we set aside the findings and sentence and do not address the remaining issues.

## I. BACKGROUND

In August of 2012, Appellant and Ms. MG were both cadets at the United States Air Force Academy (Academy). At the time of the charged offenses, Appellant and Ms. MG had begun to spend time together socially and had been on two dates, but they had not engaged in sexual intercourse. Ms. MG testified that, at some point prior to the night in question, she had a conversation in which she told Appellant she did not intend to have sex with him. During August 2012, Appellant invited Ms. MG to go with him to meet some of Appellant's friends at a restaurant and a hookah bar and then "hang out" at the home of Appellant's sponsor family.[2] When Appellant met Ms. MG at her dorm

---

[1] The court members excepted the words "on divers occasions" from the specification alleging sexual assault, and found Appellant not guilty of the excepted words.

[2] Ms. MG explained during her trial testimony:

> [A]t the Air Force Academy, every cadet is assigned a sponsor family, and it's just sometimes it's an officer or an instructor there, or sometimes it's just people that live in the city that see the Air Force Academy and they sponsor a cadet and it just gives them a place to go on the weekends, or when we have time off so that we're not always at the Academy or on lock down 24/7.

room at the beginning of the evening, he told her to pack an overnight bag just in case they ended up spending the night at the sponsor's home. Ms. MG did not consider that "abnormal" because she had spent the night in other sponsor homes with other groups of cadets, though never before with Appellant.

As it turned out, no one joined Appellant and Ms. MG at the restaurant and only one of Appellant's friends met them at the hookah bar. According to Ms. MG, Appellant and Ms. MG engaged in consensual kissing during the evening, but there was no discussion of sexual intercourse. Ms. MG testified that neither she nor Appellant consumed any alcohol. Late that night Appellant drove Ms. MG to his sponsor's house; his friend from the hookah bar did not join them.

When they arrived, Appellant woke the sleeping sponsor, Mr. GW, who let them into the house. Mr. GW then returned to bed and Appellant led Ms. MG to an upstairs bedroom. Once inside the room, according to Ms. MG, Appellant began kissing her and he moved his hands up her body to her breasts. Ms. MG pushed him away and suggested they do something else. Appellant did not respond but he "aggressively" moved her to the bed. Ms. MG testified she told him "no" but that he ignored her. Appellant removed her clothes and inserted his penis in her vagina. At some point Ms. MG "stopped fighting it" and "just kind of checked out mentally." After Appellant ejaculated, he told her to clean up. Ms. MG found the bathroom, cleaned herself, and then returned to the bed where Appellant was sleeping. She lay next to him until she eventually fell asleep.

When Ms. MG awoke, it was still dark outside. When Appellant woke up, he rolled over and again penetrated Ms. MG's vagina with his penis until he ejaculated. Ms. MG cleaned herself again, got dressed, and departed with Appellant to return to the Academy.

Ms. MG did not initially report being sexually assaulted, but she testified that after this incident she started to "distance" herself from Appellant. Eventually she told Appellant she did not want to have any relationship with him other than as a member of the same cadet squadron. Due to a medical issue, Ms. MG was later discharged from the Academy before graduating and separated from the Air Force. In the fall of 2014, after she had left the Academy, Ms. MG reported the sexual assault, first to a male friend and then to her boyfriend, who was an Air Force officer and had been in her cadet squadron with Appellant. This led to Ms. MG being interviewed by the Air Force Office of Special Investigations (AFOSI).

Appellant was charged with sexual assault "on divers occasions" based on the two instances of intercourse Ms. MG described, and with abusive sexual contact by touching Ms. MG's breasts. Prior to trial, the Defense gave notice of

its intent to offer evidence in accordance with Mil. R. Evid. 412 that Appellant and Ms. MG engaged in "consensual sex" in Appellant's dorm room "at least two times after the charged events." Trial defense counsel asserted this evidence was "constitutionally required," explaining in pertinent part: "the state of mind of the parties during the charged event can be illustrated through the subsequent acts of consensual sexual acts after the alleged charged event." The Defense later filed a pretrial motion to admit this evidence pursuant to Mil. R. Evid. 412, invoking Appellant's Sixth Amendment[3] right to cross-examination. The written motion asserted, in part: "The defense must be allowed to show that the prosecutrix engaged in consensual sex with the accused after the alleged incident because this evidence tends to show she was not sexually assaulted, and did not believe she was sexually assaulted, the first time." The Government opposed the motion, as did Ms. MG through her Special Victim's Counsel.

At trial, the military judge held a closed hearing on the motion pursuant to Mil. R. Evid. 412(c)(2). Both Ms. MG and Appellant testified for purposes of the motion. Ms. MG testified that after the assault she had no further sexual encounters with Appellant and was never in his dorm room again. In contrast, Appellant testified he had consensual sex with Ms. MG at least twice in his room after the alleged sexual assault. On cross-examination, Appellant further testified that these additional sexual encounters occurred within approximately a week and a half of the alleged assaults, that he told three other lieutenants about these encounters, and that one of these individuals also saw Ms. MG in Appellant's room during this time frame.[4]

The military judge then heard argument on the motion. Appellant's civilian defense counsel asserted the proffered evidence of post-assault consensual sexual activity did not "go to necessarily a mistake of fact as to consent or anything along those nature [sic]," but was required "to present the accuser's state of mind after the fact." He elaborated:

> CDC [Civilian Defense Counsel]: . . . [W]e feel that it's important to present this evidence to the jury in order to give them a complete picture of the events leading up to when the relationship actually ended; and it shows, you know, what's going on in Ms. [MG's] mind that she would engage in consensual sex after the fact and because she would engage in consensual sex after the fact, you have to question whether or not the allegation she's

---

[3] U.S. CONST. amend. VI.

[4] None of these individuals were called to testify for purposes of the motion.

making is even a truthful allegation. So, that's the reason we're offering it.

[Military Judge]: For her state of mind?

CDC: Yes, Your Honor.

In response, assistant trial counsel asserted that under Mil. R. Evid. 412 the Defense was required "to at least prove that the facts that they're trying to discuss and elicit are true," and had failed to do so. She further argued Ms. MG's state of mind after the alleged sexual assaults was irrelevant.

The military judge orally ruled the proffered evidence was inadmissible under Mil. R. Evid. 412 "on the theory proffered by the defense." He subsequently provided a written ruling setting forth his findings of fact and analysis. Therein he stated that although a "credibility determination" was not "required" to decide the motion "[b]ased on the Defense assertion that the evidence goes to 'state of mind' of [Ms. MG] vice some credibility on the part of [Ms. MG]," he nevertheless opined that Ms. MG gave "credible testimony" on the issue. He continued:

> *The Defense in this case has the burden to demonstrate the proffered evidence to at least a preponderance of the evidence and to provide a basis for admissibility.*
>
> They have failed on both counts. *The alleged victim testified credibly that there was no post-event consensual sexual behavior.* Additionally, the Defense did not posit a viable reason to admit the evidence. *The proffered evidence has no relevance to consent* or mistake of fact to consent *on the night in question* (like arguably pre-assault consensual behavior). The proffered evidence does not offer insight into motive on the part of the alleged victim. *Additionally, the proffered evidence is merely an assertion by the accused; completely denied by the alleged victim. There was no corroborative or independent evidence offered to assist this fact finder.*

(Emphasis added.)

Accordingly, the trial proceeded without cross-examination of Ms. MG or other evidence of post-assault consensual sexual activity between Appellant and Ms. MG. Appellant elected not to testify at trial. Appellant was convicted of abusive sexual contact and the first alleged instance of sexual assault, but he was acquitted of sexual assault in the second (morning) instance.

## II. DISCUSSION

**A. Law**

"We review a military judge's decision to admit or exclude evidence for an abuse of discretion." *United States v. Erickson*, 76 M.J. 231, 234 (C.A.A.F. 2017). "A military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect." *Id*. (quoting *United States v. Olson*, 74 M.J. 132, 134 (C.A.A.F. 2015)) (internal quotation marks omitted) (citation omitted); *see also United States v. Ellerbrock*, 70 M.J. 314, 317 (C.A.A.F. 2011) (citation omitted) ("Findings of fact are reviewed under a clearly erroneous standard and conclusions of law are reviewed de novo."). The application of Mil. R. Evid. 412 to proffered evidence is a legal issue that appellate courts review de novo. *United States v. Roberts*, 69 M.J. 23, 27 (C.A.A.F. 2010).

Mil. R. Evid. 412 provides that evidence offered by the accused to show that the alleged victim engaged in other sexual behavior is generally inadmissible, with three limited exceptions. The third exception provides that the evidence is admissible if its exclusion "would violate the constitutional rights of the accused." Mil. R. Evid. 412(b)(1)(C).[5] This exception includes an accused's Sixth Amendment right to confront witnesses against him, including the right to cross-examine and impeach those witnesses. *Ellerbrock*, 70 M.J. at 318. The burden is on the defense to overcome Mil. R. Evid. 412's general rule of exclusion by demonstrating an exception applies. *United States v. Carter*, 47 M.J. 395, 396 (C.A.A.F. 1998).

Generally, evidence of other sexual behavior by an alleged victim is constitutionally required and "must be admitted within the ambit of [Mil. R. Evid.] 412(b)(1)(C) when [it] is relevant, material, and the probative value of the evidence outweighs the dangers of unfair prejudice." *Ellerbrock*, 70 M.J. at 318 (citation omitted); *see also Roberts*, 69 M.J. at 27. Relevant evidence is evidence that has any tendency to make the existence of any fact of consequence to determining the case more probable or less probable than it would be without the evidence. Mil. R. Evid. 401. Materiality "is a multi-factored test looking at the

---

[5] The second exception permits "evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct offered by the accused to prove consent or by the prosecution." Mil. R. Evid. 412(b)(1)(B). Although the proffered evidence appears to implicate this exception, the Defense did not contend the evidence was admissible on this basis. Nevertheless, the second and third exceptions are not mutually exclusive, and the existence of this exception tends to undermine the military judge's conclusion and Government's assertion that the proffered evidence of consensual sexuality activity between Ms. MG and Appellant was irrelevant.

importance of the issue for which the evidence was offered in relation to the other issues in this case; the extent to which the issue is in dispute; and the nature of the other evidence in the case pertaining to th[at] issue." *Ellerbrock*, 70 M.J. at 318 (citations omitted) (internal quotation marks omitted) (alteration in original). The dangers of unfair prejudice to be considered "include concerns about 'harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

## B. Analysis

Appellant contends the military judge abused his discretion by denying the Defense motion to offer evidence of consensual post-offense sexual activity. We agree. We find the military judge erred both in applying an erroneous burden of proof to the Defense and in finding the proffered evidence was not relevant.

### 1. The Military Judge Applied an Erroneous Burden of Proof

In his written ruling, the military judge asserted the Defense had the burden to "demonstrate the proffered evidence to at least a preponderance of the evidence." He proceeded to find the Defense failed to do so, describing the proffer as "merely an assertion by [Appellant]," noting the absence of corroborating evidence, and citing Ms. MG's "credible" testimony that the proffered evidence was untrue. In doing so, the military judge abused his discretion by applying an erroneous standard.

In *Roberts*, the United States Court of Appeals for the Armed Forces held the military judge abused his discretion when he weighed the credibility of defense witnesses in performing a relevancy analysis under Mil. R. Evid. 412. *Roberts*, 69 M.J. at 27. "'In applying [Mil. R. Evid.] 412, the judge is not asked to determine if the proffered evidence is true . . . . Rather, the judge serves as gatekeeper deciding first whether the evidence is relevant and then whether it is otherwise competent, which is to say, admissible under [Mil. R. Evid.] 412.'" *Id.* (ellipsis in original) (quoting *United States v. Banker*, 60 M.J. 216, 224 (C.A.A.F. 2004)). Similarly, in the instant case it is apparent the military judge's ruling relied in part on a determination that Appellant's motion testimony was not sufficiently credible. This was error. "[I]t is for the members to weigh the evidence and determine its veracity." *Banker*, 60 M.J. at 224; *see also United States v. Zak*, 65 M.J. 786, 793 (A. Ct. Crim. App. 2007) ("[T]he military judge's ruling on the veracity of the evidence [proffered under Mil, R. Evid. 412] usurped the role of the panel members, was clear error, and, as a result, an abuse of discretion.") (Citation omitted.)

The military judge's ruling cited no authority for requiring proof by a preponderance of the evidence. On appeal, the Government cites Rule for Courts-

Martial (R.C.M.) 905(c), but its reliance is misplaced. R.C.M. 905(c)(1) provides: "Unless otherwise provided in this Manual [for Courts-Martial], the burden of proof on any factual issue *the resolution of which is necessary to decide a motion* shall be by a preponderance of the evidence." (Emphasis added.) The flaw in the Government's reasoning, apparent from *Roberts*, is that a military judge ruling on evidence proffered under Mil. R. Evid. 412 is not required to resolve a factual issue. 69 M.J. at 27. Again, the military judge must decide whether the proffered evidence is relevant and otherwise admissible, not whether it is true.[6]

### 2. The Military Judge Erroneously Determined the Proffered Evidence had "no relevance" to Consent

The written Defense motion asserted the proffered evidence of post-assault consensual sexual activity was constitutionally required because, *inter alia*, it tended to show Ms. MG was not sexually assaulted and she did not believe she was sexually assaulted. During argument on the motion, trial defense counsel disavowed offering the evidence to show mistake of fact as to consent; instead, he asserted the evidence was relevant to show Ms. MG's "state of mind." Although inartfully stated, the Defense motion and argument taken together indicate the evidence was offered to show the charged sexual encounters were in fact consensual. The military judge found the Defense failed to demonstrate "a basis for admissibility" and asserted, *inter alia*: "The proffered evidence *has no relevance to consent . . . on the night in question . . . .*" We cannot agree, and we find this conclusion to be an abuse of discretion.

Relevance is a "low threshold." *Roberts*, 69 M.J. at 27. Evidence is relevant if it has *any* tendency to make the existence of a fact more probable or less probable than it would be without the evidence. Mil. R. Evid. 401(a). In general, willingness to engage in consensual sexual activity has *some* tendency to indicate that recent prior sexual encounters between two individuals were also consensual. *See United States v. Sousa*, 72 M.J. 643, 648 (A.F. Ct. Crim. App. 2013) ("Evidence that [the victim] engaged in consensual sexual activity with the appellant after the date she alleged she was forcibly sodomized was constitutionally required to be admitted on the issue of consent . . . ."); *United States v. Leak*, 58 M.J. 869, 876–77 (A. Ct. Crim. App. 2003), *rev'd on other grounds*, 61 M.J. 234 (C.A.A.F. 2004); *United States v. Parker*, 54 M.J. 700, 708 (A. Ct. Crim. App. 2001). We find no reason to conclude otherwise in Appellant's case.

---

[6] The Government also cites Mil. R. Evid. 104(b), relating to evidence the relevance of which depends on the existence of another fact; but this rule is similarly inapposite because the relevance of the evidence proffered here stands alone and is not contingent on the existence of any other fact.

The Government argues that because Appellant's motion testimony "lacked corroboration" and was "wholly contested" by Ms. MG, it therefore lacked any probative value as to the charged offenses. Like the military judge, the Government fails to appreciate that such credibility assessments are not an appropriate element of the military judge's Mil. R. Evid. 412(b)(1)(C) analysis. As discussed above, the Defense is not required to convince the military judge that its evidence is true, only that it is relevant. Relevance depends on the substance of the evidence, not its relative strength in relation to other evidence in the case. It may be that in extreme cases the content of proffered evidence on a matter of "consequence in determining the action" is so patently improbable that it lacks relevance—for example, if Appellant had claimed the subsequent consensual sexual encounters took place on the moon. But that is not this case; there is nothing inherently incredible about two cadets having consensual sex in a dorm room.

### 3. The Proffered Evidence was Material and its Probative Value Outweighed the Danger of Unfair Prejudice

In addition to being relevant, the proffered evidence was material. Properly understood, the issue on which the evidence was offered—whether Ms. MG in fact consented to the charged sexual encounters—was of fundamental significance to determining whether Appellant was guilty. Similarly, that issue was certainly in dispute. Furthermore, after the military judge's ruling, there was no other evidence of consensual sexual encounters introduced at the trial; the Defense did elicit and introduce other testimony in an effort to demonstrate Ms. MG consented, but its efforts were obviously insufficient with respect to the offenses Appellant was convicted of. This is not a case where the excluded evidence was essentially redundant with the weight of other evidence before the court.

Furthermore, we find the probative value of the proffered evidence outweighs any danger of unfair prejudice. *See Ellerbrock*, 70 M.J. at 318. Notably, the military judge did not identify any such dangers in this case, and the Government's brief to this court identifies none. We can discern no palpable risk of harassment, unfair prejudice, or witness safety. The evidence would not have been unduly confusing to the court members because it involved the same two individuals at a point near in time to the charged offense; it addressed the same sequence of events, time frame, and actors that Ms. MG testified about on direct examination. Finally, as discussed above, the proffered evidence was more than marginally relevant, and it was not superfluous in light of other evidence adduced at trial.

### 4. The Erroneous Exclusion of the Proffered Evidence was Not Harmless Beyond a Reasonable Doubt

Because the proffered evidence was relevant, material, and its probative value outweighed the danger of unfair prejudice, it met the exception for constitutionally-required evidence and was admissible under Mil. R. Evid. 412(b)(1)(C). *See Ellerbrock*, 70 M.J. at 318. The military judge abused his discretion by excluding it. Therefore, we must test for prejudice which, because the error was constitutional, requires a determination whether it was harmless beyond a reasonable doubt. *Id.* at 320. In other words, the question is whether there is a "reasonable possibility" the error "might have contributed to the conviction." *Id.*

The Government case had weaknesses. Ms. MG had been dating Appellant and ultimately agreed to go alone to a room away from the Academy to spend the night with him. She stayed with him in the same bed after the first sexual assault. She did not report the sexual assault until over two years after the fact. There was no physical evidence nor any witness she contemporaneously informed of the assault. Ms. MG admitted that, after the assault and while she was still at the Academy, she wrote a character letter on behalf of Appellant. The Defense called Mr. GW, the sponsor, as a witness; he testified he did not hear anything that made him "uneasy" the night of the assault, and in the morning he heard "rhythmic moaning sounds" from the room Appellant and Ms. MG occupied and assumed they were having sex. In addition, the Defense proposed Ms. MG had a motive to falsely allege sexual assault after Appellant told Ms. MG's subsequent—and, at the time of trial, current—boyfriend, soon after the charged events and purported consensual sexual encounters, that Appellant had had sex with Ms. MG after dating her briefly. Ms. MG testified this made her boyfriend "really upset" with her, and made her "really mad" at Appellant.

The Government notes that Ms. MG would presumably have denied the proffered post-offense consensual sexual encounters if she had been cross-examined about them. However, it is possible the members might not have believed her, or might have harbored greater doubts about her testimony and credibility more generally. In addition, if the military judge had not excluded the proffered evidence, Appellant might have testified in findings and the members might have found him credible enough to raise reasonable doubts about Ms. MG's testimony.

The Government also asserts Appellant made a "litany of incriminating statements" during a pretext phone call monitored by AFOSI that Ms. MG made to him in December 2014. It is true that Appellant apologized to Ms. MG, admitted that he had been "a terrible person" and "an a[**]hole," and said he

wished he "could go back and . . . change a lot of things." However, the conversation fell far short of a confession. Appellant said he did not remember Ms. MG telling him she did not want to have sex prior to the evening in question, he repeatedly insisted he did not remember Ms. MG telling him "no" during the alleged assaults, and he stated he recalled her enjoying having sex.

The court members found Appellant not guilty of one of the alleged sexual assaults. We cannot be certain beyond a reasonable doubt that evidence Ms. MG engaged in consensual sex with Appellant a few days after the alleged assault would not have raised additional reasonable doubts in the members' minds. Accordingly, we cannot sustain Appellant's convictions.

## III. CONCLUSION

The findings of guilt and the sentence are **SET ASIDE**. A rehearing is authorized. Article 66(c), UCMJ, 10 U.S.C. § 866.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court