# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
KERN, ALDYKIEWICZ, and MARTIN
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class DAVID A. LOPEZ**
**United States Army, Appellant**

ARMY 20100457

Headquarters, Fort Bliss
Michael J. Hargis, Military Judge
Colonel Michael J. Benjamin, Staff Judge Advocate

For Appellant: Mr. William E. Cassara, Esquire; Captain Jack D. Einhorn, JA (argued); Lieutenant Colonel Peter Kageilery, Jr., JA; Captain Jack D. Einhorn, JA (on brief); Mr. William E. Cassara, Esquire; Captain Jack D. Einhorn, JA (on supplemental brief & reply brief); Major Jacob D. Bashore, JA; Captain A. Jason Nef, JA.

For Appellee: Captain Sean P. Fitzgibbon, JA (argued); Major Robert A. Rodrigues, JA; Major Katherine S. Gowel, JA; Captain T. Campbell Warner, JA (on brief); Major Daniel D. Maurer, JA.

30 July 2013

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent*

KERN, Senior Judge:

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of two specifications of aggravated sexual assault of a substantially incapacitated victim in violation of Article 120(c)(2), Uniform Code of Military Justice, 10 U.S.C. § 920(c)(2) (2006 & Supp. II 2008), *amended by* 10 U.S.C. § 920 (2012) [hereinafter UCMJ]. The panel sentenced appellant to a dishonorable discharge, confinement for seven years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved six years and six months of confinement and the remainder of the adjudged sentence. Appellant's case is now before this court for review under Article 66, UCMJ.

Appellant raises four assignments of error, two of which merit discussion and relief.[1] Each of these two assignments of error relate to the military judge's denial of defense motions to admit evidence of other sexual conduct by the victims of appellant's two aggravated sexual assaults. *See* Military Rule of Evidence [hereinafter Mil. R. Evid.] 412. Each of appellant's two sexual assaults involves a different victim and arises out of separate incidents. As to each incident, we conclude the military judge abused his discretion by separately excluding different pieces of constitutionally required evidence necessary to a fair resolution of the issues. Accordingly, each of appellant's convictions must be set aside.

## BACKGROUND

Appellant and the two victims in this case [hereinafter Victim 1 and Victim 2] were soldiers attending Advanced Individual Training (AIT) at Fort Bliss, Texas.

## VICTIM 1

On the weekend of 12 April 2009, Victim 1 was on pass and she and two other female AIT students, Private (PVT) JS and Private First Class (PFC) JR, rented a room at a local hotel. There, Victim 1 and her roommates went to a happy hour at the hotel bar and consumed alcohol. After the happy hour, they went back to their room to continue the party and were joined by about fifteen other AIT students including appellant and two other male AIT students, PVT RR and PVT EJ. During the party in the room, Victim 1 and appellant went into the bathroom where they engaged in sexual activity. After exiting the bathroom, the two re-joined the party

---

[1] Appellant's other assignments of error are rendered moot by the relief granted from our consideration of the following assignments of error:

I.

THE MILITARY JUDGE ABUSED HIS DISCRETION WHEN HE DENIED THE DEFENSE MOTION TO ADMIT EVIDENCE REGARDING [VICTIM 1'S] POST-OFFENSE SEXUAL BEHAVIOR TOWARDS PFC LOPEZ.

II.

THE MILITARY JUDGE ABUSED HIS DISCRETION WHEN HE DENIED THE DEFENSE MOTION TO ADMIT EVIDENCE REGARDING [VICTIM 2'S] SEXUAL ACTIVITY WITH [PVT RR] IN THE PRESENCE OF PFC LOPEZ IN THE HOURS LEADING UP TO THE SEXUAL ASSAULT.

in the room and Victim 1 danced with others and then went to bed. Victim 1 testified that she later awoke from her sleep with feelings of pain and discovered appellant having nonconsensual sex with her. One of Victim 1's roommates, PFC JR, was passed out drunk in the other bed in the room, and she testified that she saw a male on top of Victim 1, having sex with her. Private First Class JR further testified that Victim 1 was not moving or making noise.

At appellant's court-martial, the defense moved pursuant to Mil. R. Evid. 412 to admit evidence that, in the week following the alleged sexual assault, Victim 1 made a sexual comment about appellant and engaged in consensual sexual contact with him while riding on a bus. It was proffered that while on the bus, Victim 1 told appellant "don't worry, you don't have a small dick, you have a big dick" or words to that effect and then Victim 1 touched appellant's penis. The military judge denied the defense motion. Relying on the defense's proffer alone, and without taking evidence regarding the foregoing sexual behavior, the military judge ruled that although the proffered evidence was relevant to the defense's articulated theory of consent, it was not admissible. The military judge determined that "even though it does have probative value, it does appear to me that that probative value does not outweigh the danger of unfair prejudice to the alleged victim's privacy in this particular case. So I will exclude it under [Mil. R. Evid.] 412."

## VICTIM 2

The second charged sexual assault occurred on the weekend of 18 April 2009. Victim 2 was on pass, and she and another female AIT student, PFC TK, rented a room at a local hotel. After going to the local mall, they went back to the hotel. There they began drinking alcohol and then went to the hotel swimming pool and hot tub, where appellant and two other male AIT students, PVT RR and PVT EJ joined them. Victim 2 says she became intoxicated, did not feel well, and went up to her hotel room. She was subsequently joined in the room by PFC TK and the three male AIT students, including appellant. In the hotel room, PFC TK was on one bed kissing PVT EJ, while at the same time, appellant and the other male AIT student, PVT RR, both began engaging in sexual activity with Victim 2 on a second bed. During a motions hearing it was proffered that the sexual activity between appellant and Victim 2 included kissing and appellant digitally penetrating Victim 2's vagina. It was also proffered that the sexual activity between PVT RR and Victim 2 consisted of kissing and PVT RR getting on top of Victim 2 and ejaculating on her stomach.[2] At some point, PFC TK and the other two male AIT students, including

---

[2] After a Sexual Assault Nurse Examiner [hereinafter SANE Nurse] testified during the Government's case on the merits that Victim 2 had a tear on her labia, the

(continued . . .)

PVT RR, left the hotel room, leaving Victim 2 alone in the room with appellant. Victim 2 testified that she fell asleep but later awoke from her sleep with feelings of pain and discovered appellant having nonconsensual sex with her.

At a pretrial motions hearing, the defense moved to admit evidence of PVT RR's sexual activity with Victim 2 and details of appellant's sexual activity with Victim 2 on the bed in the hotel room earlier in the evening.[3] The defense offered two theories of admissibility for the sexual activity between PVT RR and Victim 2. The first theory attacked the allegation of Victim 2's incapacitation. The defense was aware that the government was going to introduce evidence of alcohol consumption by Victim 2 as a source of her incapacitation. Therefore, the defense wanted to put in evidence that Victim 2 had the capacity to have consensual sexual activity with PVT RR an hour or two before the alleged sexual assault and that she had no further alcohol between that sexual activity and the alleged sexual assault. The defense could then argue that because there was no further alcohol consumption after the consensual sexual activity, Victim 2 was not incapacitated at the time of the alleged sexual assault. The defense's second theory arose from a proffer by defense that there was evidence that Victim 2 told a potential witness to lie to law enforcement about her sexual activity with PVT RR. The defense's theory was that Victim 2 told her friend to lie because she had a boyfriend and wanted to conceal her consensual sexual conduct with PVT RR, and similarly, she fabricated her allegation against appellant to conceal their consensual sexual conduct from her boyfriend.

During the pretrial motions hearing, the military judge ruled that the prior sexual activity between appellant and Victim 2 was admissible, but Victim 2's sexual activity with PVT RR was inadmissible pursuant to Mil. R. Evid. 403 and Mil. R. Evid. 412. Without taking evidence, despite the defense's willingness to present evidence, the military judge ruled that, under both of the proffered theories, the probative value of the sexual conduct between PVT RR and Victim 2 did not outweigh the prejudice to Victim 2's privacy. Additionally, in response to testimony during the Government's case on the merits from a SANE Nurse that Victim 2 had a tear in her labia, the defense moved to admit testimony from PVT RR that he

---

(. . . continued)
defense proffered that PVT RR would also testify that "he was inserting his finger in her vagina and rubbing her vaginal area with his finger."

[3] Although the defense's written motion requested admission of only the sexual activity between appellant and Victim 2, the defense clarified during the motions hearing that they also wanted to admit Victim's 2's simultaneous sexual conduct with PVT RR.

digitally penetrated Victim 2 and was a possible alternate source of the injury. The military judge also ruled that this testimony was inadmissible.

## LAW

"[E]vidence offered by the accused to prove the alleged victim's sexual predispositions, or that she engaged in other sexual behavior, is inadmissible, except in limited contexts. [Mil. R. Evid.] 412(a)–(b). The rule is intended to shield victims of sexual assaults from the often embarrassing and degrading cross-examination and evidence presentations common to [sexual offense prosecutions]." *United States v. Ellerbrock*, 70 M.J. 314, 317–18 (C.A.A.F. 2011) (quoting *United States v. Gaddis*, 70 M.J. 248, 252 (C.A.A.F. 2011)) (second alteration in original) (internal quotation marks omitted). However, Mil. R. Evid. 412(b) provides several exceptions to this general rule of inadmissibility:

> (b) *Exceptions*.
> (1) In a proceeding, the following evidence is admissible, if otherwise admissible under these rules:
>
> > (A) evidence of specific instances of sexual behavior by the alleged victim offered to prove that a person other than the accused was the source of semen, injury, or other physical evidence;
> >
> > (B) evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct offered by the accused to prove consent or by the prosecution; and
> >
> > (C) evidence the exclusion of which would violate the constitutional rights of the accused.

The rule further prescribes the following test for determining the admissibility of such evidence:

> If the military judge determines . . . that the evidence the accused seeks to offer is relevant for a purpose under subsection (b) and that the probative value of such evidence outweighs the danger of unfair prejudice to the alleged victim's privacy, such evidence shall be admissible under this rule. . . .

Mil. R. Evid. 412(c)(3). *See also United States v. Banker*, 60 M.J. 216 (C.A.A.F. 2004). However, this balancing procedure is no longer viable following our superior court's decisions in *Gaddis* and *Ellerbrock*.

5

In *Gaddis*, the Court of Appeals for the Armed Forces (CAAF) held that the Mil. R. Evid. 412(c)(3) balancing procedure is "[a]t best a nullity," and at worst unconstitutional, insofar as it limits introduction of constitutionally required evidence based on the danger of unfair prejudice to the victim's privacy. *Gaddis*, 70 M.J. at 256. In *Ellerbrock*, CAAF clarified that a court must determine whether evidence is constitutionally required, and thus admissible as an exception to Mil. R. Evid. 412, by instead deciding whether the evidence is "relevant, material, and [whether] the probative value of the evidence outweighs the dangers of unfair prejudice." *Ellerbrock*, 70 M.J. at 318.

> Relevant evidence is any evidence that has "any tendency to make the existence of any fact . . . more probable or less probable than it would be without the evidence." [Mil. R. Evid.] 401. The evidence must also be material, which is a multi-factored test looking at "'the importance of the issue for which the evidence was offered in relation to the other issues in this case; the extent to which the issue is in dispute; and the nature of the other evidence in the case pertaining to th[at] issue.'" *Banker*, 60 M.J. at 222 (quoting *Unites States v. Colon-Angueira*, 16 M.J. 20, 26 (C.M.A. 1983)). Finally, if evidence is material and relevant, then it must be admitted when the accused can show that the evidence is more probative than the dangers of unfair prejudice. *See* [Mil. R. Evid.] 412(c)(3). Those dangers include concerns about "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." [*Delaware v*.] *Van Arsdall*, 475 U.S. [673,] 679 [(1986)].

*Ellerbrock*, 70 M.J. at 318–19.

"We review a military judge's ruling on whether to exclude evidence pursuant to [Mil. R. Evid.] 412 for an abuse of discretion. *United States v. Roberts*, 69 M.J. 23, 26 (C.A.A.F. 2010). Findings of fact are reviewed under a clearly erroneous standard and conclusions of law are reviewed de novo." *Id.* at 317.

If a military judge abuses his discretion by excluding evidence pursuant to Mil. R. Evid. 412, we must then determine whether the military judge's error was harmless beyond a reasonable doubt. *Id.* at 320 (citing *United States v. Moran*, 65 M.J. 178, 187 (C.A.A.F. 2007)). In assessing harmlessness, we apply the five *Van Arsdall* factors: (1) the importance of the testimony; (2) whether the testimony was cumulative; (3) the presence or absence of corroborating or contradictory evidence on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case. *Id.* (citing *Van Arsdall*, 475 U.S. at 684).

## DISCUSSION

Appellant's case was tried prior to our superior court's *Gaddis* and *Ellerbrock* decisions. Consequently, the military judge used a pre-*Gaddis* and pre-*Ellerbrock* view that overly emphasized the privacy of the victim. In applying the correct test, we conclude that it was error to exclude, pursuant to Mil. R. Evid. 412 and 403, the defense's proffered evidence as to the sexual behavior of each victim. Furthermore, we find this error was not harmless beyond a reasonable doubt.

### VICTIM 1

The military judge denied the defense's motion to admit evidence pertaining to Victim 1's sexual comment to appellant, and consensual sexual contact with appellant, both of which occurred on a bus ride to a military training event during the week following appellant's alleged sexual assault of her. As mentioned above, the military judge applied a pre-*Gaddis* and pre-*Ellerbrock* analysis. We will now apply the proper analysis as set out in *Ellerbrock*.

Based on the record before us, we adopt the military judge's determination that the proffered sexual behavior on the bus was relevant.[4] We further find this sexual behavior "material" as it goes directly to the defense theory of consent, especially considering that there was admissible evidence that: (1) Victim 1 had made numerous comments about her desire to have sex with appellant, and (2) Victim 1 engaged in sexual activity with appellant in the bathroom on the evening of the alleged sexual assault. In addition, we also conclude that the probative value of the proffered evidence outweighs dangers of unfair prejudice, particularly as these alleged acts occurred in an open setting (on a bus) countering any privacy concerns. In addition, the parties who supposedly witnessed the events were students in a training school, have since completed that school, and are no longer assigned to the

---

[4] We note that although the defense has the burden to prove relevancy, the military judge's ruling was made without taking any evidence and based only upon the defense's written proffer in their motion. We also note that during appellant's testimony on other Mil. R. Evid. 412 issues, the defense appeared ready to have appellant testify about the sexual comment and contact on the bus, but the judge reasserted his earlier ruling that those were inadmissible. Despite a seemingly inadequate record to determine relevancy, under the circumstances of this case, we decline to hold this against appellant, and we adopt the military judge's conclusion with regards to relevancy. We also note that this adoption of the military judge's ruling is for purposes of this decision alone and does not foreclose any subsequent relevancy decision based on additional evidence.

same unit, thereby reducing the chances of embarrassment or harassment as a result of such testimony. Therefore, because the proffered evidence regarding Victim 1's sexual comment and contact on the bus was relevant, material, and more probative than any danger to unfair prejudice, we hold that the military judge erred by excluding this evidence.

Moving to a prejudice analysis, we note that the undeveloped record leaves us somewhat handicapped in our application of the *Van Arsdall* factors. Although the moving party would typically bear the responsibility for a lack of evidence regarding the motion, in this case the military judge's decision leaves us at a disadvantage. From the record before us, we are unable to ascertain exactly how the defense intended to admit evidence of the sexual behavior on the bus, for example, through cross-examination of Victim 1, through appellant, or through a third party. At a minimum, it appears appellant would have testified about what occurred on the bus; however, the military judge prevented this testimony by reasserting, in response to an inquiry by defense counsel, that he had already ruled any such testimony was inadmissible under Mil. R. Evid. 412. Therefore, for our analysis we will presume, based on the military judge's relevancy determination, that there is evidence from some source regarding Victim 1 making a sexual comment and having sexual contact with appellant on a bus in the days following her alleged sexual assault.

Because of the uncontested nature of the proffered testimony, we find that the improperly excluded evidence impacts directly upon the defense of consent and that such evidence would favor the defense for all of the first four *Van Arsdall* factors: (1) the importance of the testimony; (2) whether the testimony was cumulative; (3) the presence or absence of corroborating or contradictory evidence on material points; and (4) the extent of cross-examination otherwise permitted. *See Van Arsdale,* 475 U.S. at 684. Moreover, we find the fifth factor also favors the defense as the prosecution's case was not strong with regards to this specification. In particular, there was contradictory evidence concerning Victim 1's level of intoxication, there was no immediate official reporting, there was evidence of Victim 1's character for untruthfulness, and there was evidence of prior sexual discussions and sexual contact between Victim 1 and appellant. Thus, on the record before us, we hold that the military judge's error in excluding evidence concerning the sexual comment and sexual contact on the bus was not harmless beyond a reasonable doubt.

## VICTIM 2

The military judge also excluded evidence of Victim 2's sexual activity with PVT RR, which took place earlier in the evening on the same night as the sexual assault. Again, we find the military judge's Mil. R. Evid. 412 analysis was erroneous in light of *Gaddis* and *Ellerbrock*, and we will properly evaluate appellant's claims below.

Similar to our evaluation of the evidence regarding Victim 1, we are also in the position that no evidence was taken, which we again at least partially lay at the feet of the military judge and will not hold against appellant.[5]  Therefore, we again base our decision on the record before us, which consists of proffers from the defense counsel during the motion hearing and includes an uncontested description of Victim 2 engaging in consensual sexual activity with PVT RR as close in time as one hour before the sexual assault in which the victim was allegedly incapacitated. In addition, there is proffered evidence that Victim 2 has a boyfriend, and she told a potential witness to lie to civilian authorities about her consensual sexual activity with PVT RR.

Under our review of this proffered evidence, we find Victim 2's consensual sexual activity with PVT RR relevant to whether Victim 2 was incapacitated later in the evening.  We also find the sexual activity relevant to her credibility in the context that it was something she was willing to tell someone to lie about to authorities.  We further find this sexual activity "material," as both Victim 2's incapacitation and her credibility were in dispute.  Additionally, we conclude that the probative value of the proffered evidence outweighs dangers of unfair prejudice, particularly as these acts, like those of Victim 1, allegedly occurred in an open setting countering any privacy concerns.  In addition, all parties and witnesses to the events appear to be students in a training school and have since completed that school, thereby reducing the chances of embarrassment or harassment as a result of such testimony.  Therefore, because the proffered evidence regarding Victim 2's sexual activity with PVT RR on the hotel bed is more probative than any danger of unfair prejudice, we hold that the military judge erred in excluding this evidence.

Analyzing this evidence for prejudice, we again note that the undeveloped record leaves us somewhat handicapped in our application of the *Van Arsdall* factors to the proposed testimony.  Although the moving party would typically bear the responsibility for a lack of evidence regarding the motion, the military judge's decision in this instance leaves us at a disadvantage again.  From the record before us, we are uncertain as to how the defense intended to bring forth the evidence of the sexual activity between Victim 2 and PVT RR on the bed, for example, through

---

[5] As we noted previously, the defense has the burden to prove relevancy, but the military judge's ruling was made without taking any evidence and based only upon the defense's proffers during the motions hearing.  We also note that during the motions hearing, the defense indicated a willingness to present evidence, but the military judge made his ruling and indicated it was not because of a lack of evidence.  We also note that our current decision does not foreclose a different decision based on additional evidence.

cross-examination of Victim 2, through testimony of the appellant, or through testimony of PVT RR or the other individuals in the room.  Because the military judge declined to receive evidence on this matter, our analysis will be based on the proffers made by defense counsel during the motions hearing as set out in the background section of this opinion.

We find the proffered evidence, which is uncontested, goes directly to the defense's theories that Victim 2 was not incapacitated, that her allegation against appellant was fabricated, and that such evidence favors the defense for all of the first four *Van Arsdall* factors.[6]  Moreover, we find the fifth factor also favors the defense as the prosecution's case was not strong with regard to this specification.  In particular, there was contradictory evidence concerning Victim 2's capacity, near in time to the alleged sexual assault, and her credibility was put into question.  Thus, on the record before us, we hold that the military judge's error, ruling the evidence concerning the sexual activity between PVT RR and Victim 2 was inadmissible, was not harmless beyond a reasonable doubt.

In addition to the prejudicial error noted above regarding the Mil. R. Evid. 412 issues litigated at the pretrial motions hearing, we also find prejudicial error in a later ruling by the military judge.  This later ruling excluded testimony about Victim 2's sexual activity with PVT RR under an additional defense theory that PVT RR was an alternate source of sexual injury to Victim 2.  During the government case on the merits, the prosecution called a SANE Nurse as a witness.  This witness testified that she conducted an exam of Victim 2 the morning following the alleged sexual assault which found redness in Victim 2's vagina and a tear on her labia.  The witness characterized the findings as an injury and further testified that her findings were indicative of sexual activity having occurred, but she could not determine if it was consensual or not and that her findings were consistent with either a sexual assault or consensual intercourse.

---

[6] Although the military judge allowed the defense to call a witness to testify that Victim 2 asked her to lie to authorities, the military judge precluded the defense from bringing out that sexual activity between Victim 2 and PVT RR was the substance of the lie.  When a panel member submitted a question concerning the underlying subject of the lie, the military judge asked the question in a manner to shield Victim 2, eliciting a response from the witness on the stand that the lie did not involve anything that happened between Victim 2 and appellant.  We find that this questioning by the military judge may have given a false impression to the panel that the lie had nothing to do with the case.  This unfairly prejudiced the defense because it minimized the impact of the lie on Victim 2's credibility and undercut the defense theory that Victim 2 fabricated her allegation against appellant to conceal her consensual sexual activity with appellant from her boyfriend.

In response to the SANE Nurse's testimony, the defense requested the judge allow testimony from PVT RR as an alternate source of the injury. The defense proffered that PVT RR would testify that he inserted his finger into Victim 2's vagina and rubbed her vaginal area with his finger. The military judge denied the defense's request. Prior to making his ruling, the military judge inquired of the defense and received a response that their theory was consent. The military judge then reasoned that because the government only offered the SANE Nurse testimony to prove sexual intercourse occurred, and since the defense theory was consent, then the source of injury did not matter. We disagree. We find that evidence of sexual injury leaves such a strong impression of nonconsensual sex and that testimony concerning an alternate source of that injury is highly relevant. Moreover, such evidence is a specific exception under Mil. R. Evid. 412(b)(1)(A). Thus, despite the SANE Nurse's testimony that the injury was consistent with both a sexual assault and consensual sexual activity, we cannot disregard the possibility that the panel inferred that the injury was more indicative of a nonconsensual sexual assault, particularly since Victim 2 testified she was awakened by the "pain" of sexual intercourse with appellant. Therefore, we find the military judge's decision to exclude testimony of an alternate source of Victim 2's vaginal injury was prejudicial error. Finally, we conclude that this error and the error identified above, each standing alone, would require the corrective action we take below.

## CONCLUSION

On consideration of the entire record and based upon the military judge's erroneous exclusion of evidence pursuant to Mil. R. Evid. 412, the findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Judge ALDYKIEWICZ and Judge MARTIN concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

11