# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.R. MCFARLANE, M.C. HOLIFIELD, K.J. BRUBAKER**
Appellate Military Judges

**UNITED STATES OF AMERICA**

**v.**

**JIM D. VILLANUEVA**
**SHIP'S SERVICEMAN SECOND CLASS (E-5), U.S. NAVY**

**NMCCA 201400212**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 14 February 2014.
**Military Judge:** CAPT B.L. Payton-O'Brien, JAGC, USN.
**Convening Authority:** Commander, Naval Medical Center, San Diego, CA.
**Staff Judge Advocate's Recommendation:** CDR K.M. Messer, JAGC, USN.
**For Appellant:** LT Jessica L. Ford, JAGC, USN.
**For Appellee:** LT Ian D. MacLean, JAGC, USN; Capt Matthew Harris, USMC.

**29 January 2015**

---------------------------------------------------------
## OPINION OF THE COURT
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

HOLIFIELD, Judge:

A panel of members with enlisted representation sitting as a general court-martial convicted the appellant, contrary to his pleas, of forcible sodomy in violation of Article 125, Uniform Code of Military Justice, 10 U.S.C. §925.[1] The members sentenced

---
[1] The appellant was acquitted of a second specification of forcible sodomy involving a different alleged victim on an occasion several years earlier.

the appellant to one year of confinement and a dishonorable discharge.  The convening authority (CA) approved the sentence as adjudged.

The appellant raises four assignments of error (AOE):

(1) that the evidence is legally and factually insufficient to support his conviction;

(2) that the military judge erred in excluding evidence under MILITARY RULE OF EVIDENCE 412, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.);

(3) that the CA was subject to unlawful command influence in his decision to refer the charges to court-martial; and

(4) that the military judge improperly denied a challenge for cause against a member.

After careful consideration of the record of trial, the appellant's AOEs, and the submissions of the parties, we find merit in the appellant's second AOE.  We address the remedy in our decretal paragraph.  This corrective action moots the appellant's fourth AOE.  The remaining assignments of error raised by the appellant merit neither relief nor further analysis.  *United States v. Clifton*, 35 M.J. 79, 81 (C.M.A. 1992) (citing *United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

**Background**

The appellant and the complaining witness, Hospitalman (HN) P, both males, were stationed at Naval Station, Guantanamo Bay in late 2011.  The appellant expressed a romantic interest in HN P to a mutual friend, Missile Technician Second Class (MT2) W, who responded by informing the appellant that HN P was not homosexual.  During a separate conversation, MT2 W told HN P of the appellant's interest.  HN P indicated he did not share the interest, but was willing to meet the appellant, as the appellant was well known for his extravagant parties. Approximately a week later, HN P was invited to join the appellant and Master-at-Arms Second Class (MA2) R at their table in the chow hall.  During this initial conversation with the appellant and MA2 R, HN P described things he had done while drunk, including placing his penis in another man's hand during a penis measuring contest.

2

Later that night, the appellant, HN P, MA2 R and a group of others met for a barbecue at a block of trailers used as barracks. Shortly thereafter, they proceeded to an on-base bar, where they consumed various alcoholic beverages until the bar closed. HN P then invited the group back to his trailer to continue drinking. At the time they arrived at the trailer, HN P had consumed less than one drink per hour throughout the evening. He would have at least five more in the next 90 minutes.

While outside HN P's trailer, the appellant and HN P conversed with each other as the others in the party slowly departed. HN P's last memory of the party involves taking off his shirt to show the appellant his tattoos. His next recollection is a brief moment of lucidity when he realized the appellant was attempting to anally penetrate him as he lay in his trailer. Although he recalls being in pain, he does not remember saying anything. He also has a brief memory of the appellant fully penetrating him and kissing him on the lips. HN P remembers nothing else until he awoke alone, naked and in pain the following morning. He initiated the reporting process later that day.

During the alleged assault, HN P's trailer-mate, Sergeant (Sgt) B, heard what he described as "sexual noises" coming from HN P's room.[2] Record at 883. Among these noises, Sgt B testified that he heard HN P say, "Oh, baby, that feels good." *Id*. at 892.

## Exclusion of Evidence under MIL. R. Evid. 412

Prior to trial, the appellant's trial defense counsel filed a motion to admit evidence of the statement HN P made to the appellant and MA2 R at lunch the day before the alleged assault. The defense argued that HN P's statement concerning his placing his penis in another man's hand was constitutionally required, in that it showed a motive to fabricate, impeached HN P's testimony that he was not gay, and was relevant to the appellant's mistake of fact as to consent. The military judge, in a brief e-mail to counsel, issued the following ruling: "The defense MAY ask ONE QUESTION of [HN P] as to confirm his sexual orientation, under MRE 608(c) to demonstrate bias, prejudice or motive to misrepresent. . . . Pursuant to MRE 412(c), the defense MAY NOT inquire as to [HN P's] prior act with another male in which he exposed his penis in some sort of 'penis measuring' contest." Appellate Exhibit XXXV. No additional

---

[2] The trailers consisted of two rooms joined by a common bathroom.

3

findings of fact or conclusions of law are included in the record.

We review the military judge's ruling on whether to exclude evidence pursuant to MIL. R. EVID. 412 for an abuse of discretion. *United States v. Roberts*, 69 M.J. 23, 26 (C.A.A.F. 2010). We review the findings of fact under a clearly erroneous standard and the conclusions of law *de novo. Id.* The abuse of discretion standard "recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range." *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008) (citations and internal quotation marks omitted).

Under MIL. R. EVID. 412, evidence offered by the accused to show that the alleged victim engaged in other sexual behavior is inadmissible, with three limited exceptions. The third exception states that the evidence is admissible if "the exclusion of [it] would violate the constitutional rights of the accused." MIL. R. EVID. 412(b)(1)(C). If there is a theory of admissibility under one of the exceptions, the military judge, before admitting the evidence, must conduct a balancing test as outlined in MIL. R. EVID. 412(c)(3) and clarified by *United States v. Gaddis*, 70 M.J. 248, 250 (C.A.A.F. 2011).

The test is whether the evidence is "relevant, material, and [if] the probative value of the evidence outweighs the dangers of unfair prejudice." *United States v. Ellerbrock*, 70 M.J. 314, 318 (C.A.A.F. 2011) (citation omitted). Relevant evidence is any evidence that has "any tendency to make the existence of any fact . . . more probable or less probable than it would be without the evidence." MIL. R. EVID. 401. Evidence is material if it is "of consequence to the determination of appellant's guilt[.]" *United States v. Dorsey*, 16 M.J. 1, 6 (C.M.A. 1983) (citations and internal quotation marks omitted).

> In determining whether evidence is of consequence to the determination of appellant's guilt, we consider the importance of the issue for which the evidence was offered in relation to the other issues in this case; the extent to which this issue is in dispute; and the nature of the other evidence in the case pertaining to the issue.

*United States v. Smith*, 68 M.J. 445, 448 (C.A.A.F. 2010) (citation and internal quotation marks omitted).

If evidence is relevant and material, it must be admitted where its probative value outweighs the dangers of unfair

prejudice.  *See* MIL. R. EVID. 412(c)(3).  "Those dangers include concerns about 'harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'"  *Ellerbrock,* 70 M.J. at 319 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).  If the evidence survives the inquiry, a final consideration is whether the evidence in the record supports the inference on which the moving party is relying.  *Id.*

MIL. R. EVID. 412 "is intended to protect the privacy of victims of sexual assault while at the same time protecting the constitutional right of an accused to a fair trial through his right to put on a defense."  *Id*. at 322 (Baker, J., dissenting). This right necessarily includes the ability to cross-examine and to impeach or discredit a witness.  The cross-examination, however, need not be "'in whatever way, and to whatever extent, the defense might wish[,]'" and the military judge may limit the scope of such cross-examination when its relevance is outweighed by concerns of harassment, prejudice, or confusion of the issues. *Id.* at 318 (quoting *Van Arsdall,* 475 U.S. at 679) (additional citation omitted).  "But no evidentiary rule can deny an accused of a fair trial or all opportunities for effective cross-examination."  *Id.* (citation omitted).

Applying the above test to the facts of this case, we find the military judge erred in excluding the statement.  Here, the Government was required to prove beyond a reasonable doubt that the appellant did not hold a reasonable and honest, although mistaken, belief that HN P was consenting to the sexual activity.  One relevant factor on this point was whether the appellant reasonably believed HN P was amenable to engaging in a homosexual act.  On this point, the members were left with an incomplete picture of what the appellant believed about HN P's sexual predisposition, that is, only that he had been told that HN P "doesn't swing that way."  Record at 799.  The Government sought the benefit of this incomplete picture, arguing the appellant's knowledge of HN P's sexual orientation did not support that the appellant "was reasonably mistaken somehow." *Id*. at 1051.  Given the unique nature of sexual orientation, the appellant's knowledge of whether HN P was at all willing to engage in same-sex intimate contact was a critical question for the members in deciding whether the appellant's purported mistake of fact as to consent was objectively reasonable. Accordingly, the statement made by HN P to the appellant regarding the measuring contest was both relevant and material. That HN P told the appellant that he did this while drunk, combined with HN P's accelerated drinking as the party wound

5

down and the others left the pair alone, was also relevant and material to an assessment of the appellant's state of mind.

The next question, then, is whether the probative value of the evidence outweighs the dangers of unfair prejudice. We find that it does. First, the probative value of this evidence is high. Consent was the primary, if not sole, issue in this case, and HN P's credibility was the key to that issue. While the prosecution warned of distraction and the need for a "trial within a trial" should the statement be admitted, these concerns are unfounded. The only issue relevant to the appellant's belief was whether and in what context the appellant heard HN P make the statement; it does not matter whether the statement was true.[3]

These statements go directly to the appellant's ability to challenge the Government's proof that the appellant did not hold a reasonable and honest belief that HN P was consenting to the sexual activity. By excluding them, the military judge denied the appellant his right to mount a defense, and allowed the Government to meet its burden based on an incomplete description of events. In its opening statement, the Government described HN P as someone who "was all about meeting whoever knew the good looking girls," and was "not into [homosexual activity]." *Id.* at 668. HN P testified during the trial that he "was straight." *Id.* at 859. This could only have left the members with the impression that, since HN P was not gay, he would not have consented to the sodomy. Compounding the problem, the military judge's ruling only served to further hamstring DC's ability to impeach HN P's statement that he was not homosexual. The likely result of asking the one question allowed by the military judge would have been to reinforce HN P's earlier, incomplete testimony to the members.

We also find the appellant's theory of admissibility is supported by the record. At trial, civilian defense counsel argued that the statement "reflects [the appellant's] understanding of the interactions. I mean, it speaks to

_____

[3] While on the issue of consent – another defense the Government had to disprove beyond a reasonable doubt – the underlying truth of HN P's statement may be relevant, we do not doubt the military judge could have fashioned proper limits on questioning regarding HN P's sexual orientation. Precluding the entire line of questioning that may have corrected an erroneous or incomplete understanding by the members, however, was a step too far. This is not to say an alleged victim's sexual orientation is, by itself, relevant on the issue of consent. *See United States v. Grant*, 49 M.J. 295 (C.A.A.F. 1998). But, where the Government uses the claimed orientation in a way that implies the impossibility of consent, the accused should be allowed to rebut that inference.

consent. It speaks to mistake of fact." *Id.* at 127. We agree. Given that HN P made the statement to the appellant soon after their first meeting, and after HN P had been informed of the appellant's romantic interest in him, it would not have been unreasonable for the appellant to take the statement as an indication that HN P was receptive to his attention.

Because we find HN P's statement to the appellant to be relevant and material, and its probative value to outweigh the dangers of unfair prejudice, its admission was constitutionally required. We, therefore, must test whether exclusion of this evidence was harmless beyond a reasonable doubt. In doing so, we apply the five nonexclusive factors developed in *Van Arsdall*:

> [T]he importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."

475 U.S. at 684 (citations omitted).

The only evidence presented by the Government in this case to prove what happened in HN P's trailer on the night in question was HN P's testimony. HN P's statements that he was straight and did not consent to the sodomy were crucial to the appellant's conviction. The trial defense counsel was not allowed to cross-examine HN P on his claim of heterosexuality. While the military judge did permit the defense's expert to testify regarding why a victim of sexual assault may invent facts in order to deal with behavior of which the person might be ashamed, this theoretical discussion was clearly eclipsed by HN P's sworn testimony that he was not gay and did not consent to the sodomy. Finally, the Government case was far from overwhelming, there being little, if any, evidence to corroborate HN P's description of events in the trailer.

We find that, had the military judge admitted HN P's statement, the members could have "received a significantly different impression" of both HN P's credibility and the reasonableness of any mistaken belief held by the appellant. *Ellerbrock,* 70 M.J. at 321 (citations and internal quotation marks omitted). Furthermore, we are convinced that there is "a reasonable possibility that the [exclusion of the evidence] might have contributed to the conviction." *Id.* (citation and internal quotation marks omitted) This is particularly true when

7

the statement is combined with the sounds and words overheard in the trailer that night by Sgt B.  Accordingly, we find this error was not harmless beyond a reasonable doubt.

## Conclusion

The findings of guilty and the sentence are set aside.  The record of trial is returned to the Judge Advocate General of the Navy for remand to an appropriate CA with a rehearing authorized.

Senior Judge MCFARLANE and Judge BRUBAKER concur.

For the Court


R.H. TROIDL
Clerk of Court