**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Senior Airman PATRICK E. LEONARD, JR.**
**United States Air Force**

**ACM 38484**

**7 MAY 2015**

Sentence adjudged 20 September 2013 by GCM convened at Moody
Air Force Base, Georgia. Military Judge: Lynn Watkins.

Approved Sentence: Bad-conduct discharge and reduction to E-1.

Appellate Counsel for the Appellant: Captain Michael A. Schrama.

Appellate Counsel for the United States: Colonel William R. Youngblood;
Major Daniel J. Breen; and Gerald R. Bruce, Esquire.

Before

SANTORO, WEBER, and CONTOVEROS
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent
under AFCCA Rule of Practice and Procedure 18.4.

SANTORO, Judge:

A general court-martial composed of officer and enlisted members convicted the
appellant, contrary to his pleas, of one specification of attempted aggravated sexual
assault against Airman First Class (A1C) BS and one specification of aggravated sexual
contact with A1C BS on the same occasion, when she was incapable of consenting due to
her impairment by alcohol, in violation of Articles 80 and 120, UCMJ, 10 U.S.C. §§ 880,

920.[1]  The adjudged and approved sentence consisted of a bad-conduct discharge and reduction to E-1.

The appellant argues (1) his sentence is inappropriately severe, (2) apparent unlawful command influence so permeated the Air Force at the time of his trial that a fair trial and clemency consideration were impossible, (3) the military judge abused her discretion in excluding evidence pursuant to Mil. R. Evid. 412, and (4) his trial defense counsel was ineffective.[2]  We disagree and affirm.

*Background*

On the evening of 18 August 2012, A1C BS went to dinner with several friends. At dinner she drank two mudslides (containing Kahlua, ice cream, and chocolate syrup). After dinner she returned to her dormitory room and consumed a large cup of wine.  She went to the "smoke pit" on base, met several friends, and the group decided to go out to a club.  In preparation for the trip to the club, A1C BS returned to her room to change clothes and drink three miniature bottles of Hpnotiq (a mix of vodka, cognac, and fruit juice) and 12 ounces of Red Bull.  She returned to the smoke pit with a miniature bottle of Tequila, which she also consumed.  A1C BS and her friends were at the club for several hours, leaving at approximately 0200.  During that time, she consumed an additional four large shots of Patron and a portion of a Bud Light beer.

As the group was leaving the club, another Airman invited A1C BS and her friends to a party at the appellant's house.  Neither A1C BS nor any of the others in her group—with the exception of the Airman who invited her—knew the appellant.

The group went to the appellant's home.  A1C BS was feeling extremely intoxicated and, after some period of time, asked for water and a sandwich and said she wanted to return to the base.  Instead of receiving water, she was given what she later concluded was a bottle of vodka, which she "chugged" not realizing what it was.

Later, as A1C BS was sitting on the floor, the appellant stood her up and guided her to his room.  The appellant began undressing as they walked.  Once inside, the appellant laid A1C BS on his bed, touched her shoulders and breasts, and removed her shirt and bra.  He put a condom on because, as he later told the Air Force Office of Special Investigations (AFOSI) investigator, he was hoping to "get some."  A1C BS blacked out and awakened with her pants and underwear around her knees. The appellant later told AFOSI he stopped his efforts when A1C BS called out her friend's name and then passed out.

---

[1]  The appellant was acquitted of a third charge alleging that he violated an order by failing to inform Airman First Class (A1C) BS of his HIV-positive status prior to attempting to engage her in sexual relations.
[2]  These four issues were raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

Additional facts necessary to resolve the assigned errors are included below.

*Sentence Appropriateness*

This court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006); *United States v. Baier*, 60 M.J. 382, 383–84 (C.A.A.F. 2005). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). We assess sentence appropriateness by considering the appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982); *United States v. Bare*, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006), *aff'd*, 65 M.J. 35 (C.A.A.F. 2007).

While we have a great deal of discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999); *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A. 1988). The maximum imposable sentence was a dishonorable discharge and confinement for 27 years. The approved sentence of a bad-conduct discharge and a reduction to E-1 was clearly within the discretion of the convening authority.

The appellant argues the bad-conduct discharge is inappropriately severe given the nature of his prior military service. We have given individualized consideration to this appellant and the evidence in the record, including his three combat deployments. Nevertheless, we conclude the sentence is not inappropriately severe for this appellant who attempted to commit aggravated sexual assault against a fellow Airman and committed aggravated sexual contact upon her while she was incapacitated by alcohol.

*Unlawful Command Influence*

The appellant next alleges that apparent unlawful command influence (UCI) so permeated the Air Force at the time of his trial that it was impossible for him to receive a fair trial or clemency consideration. The appellant asked the military judge to dismiss all charges on this same basis. The military judge denied the motion.

According to the appellant, it was impossible for him to receive a fair trial or post-trial processing due to the cumulative effect of comments made by the President of the United States, the Chief of Staff of the Air Force, the former and current Secretaries of Defense, and other senior military leaders.

Article 37(a), UCMJ, 10 U.S.C. § 837(a) states in relevant part: "No person subject to this chapter may attempt to coerce or . . . influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case . . . ." The mere appearance of UCI may be "as devastating to the military justice system as the actual manipulation of any given trial." *United States v. Ayers*, 54 M.J. 85, 94–95 (C.A.A.F. 2000) (citation omitted) (internal quotation marks omitted).

The burden of raising the issue of UCI rests with trial defense counsel. *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999) (citation omitted). "[T]he defense must (1) show facts which, if true, constitute unlawful command influence; (2) show that the proceedings were unfair; and (3) show that unlawful command influence was the cause of the unfairness." *Id.* (citation omitted). To meet the threshold for raising this issue, trial defense counsel is required to present "some evidence" of unlawful command influence. *Id.* If the defense meets that burden to raise the issue, the burden shifts to the government, who must: "(1) disprove the predicate facts on which the allegation of unlawful command influence is based; (2) persuade the military judge that the facts do not constitute unlawful command influence; or (3) prove at trial that the unlawful command influence will not affect the proceedings." *United States v. Simpson*, 58 M.J. 368, 373 (C.A.A.F. 2003) (citation omitted) (internal quotation marks omitted). "'Whichever tactic the Government chooses, the quantum of proof is beyond a reasonable doubt.'" *Id.* (quoting *United States v. Stoneman*, 57 M.J. 35, 41 (C.A.A.F. 2002)).

Where, as here, the issue is litigated on the record at trial, the military judge's findings of fact are reviewed under a clearly erroneous standard, but the question of command influence flowing from those facts is a question of law that this court reviews de novo. *United States v. Villareal*, 52 M.J. 27, 30 (C.A.A.F. 1999).

The appellant's argument at trial was focused on various comments by officials including the President of the United States, the Secretary of Defense, and other Air Force senior leaders. Notably, none of the comments at issue were made by anyone directly involved in the appellant's court-martial.

The military judge initially ruled that the defense met its burden to establish facts which, if true, amounted to UCI, thus shifting the burden to the prosecution. During voir dire, the military judge and counsel questioned the members concerning the statements at issue as well as their general perceptions about how sexual assault allegations were being treated in the military. Trial defense counsel conceded that the members' responses demonstrated that they had not been actually influenced. The military judge concluded that the existence of UCI had been disproven beyond a reasonable doubt.

Following the guilty verdict but before announcement of sentence, the military judge considered whether the clemency process would be affected by UCI. The

government submitted the affidavit of the general court-martial convening authority, who stated that he would follow the guidelines of Rule for Courts-Martial 1107 when performing his post-trial review. Based on this unrebutted affidavit, the military judge also concluded that the existence of UCI in the post-trial process had been disproven beyond a reasonable doubt.

We have ourselves reviewed the entire record, including the comments made by the senior officials and the members' responses during the voir dire process. The military judge's findings of fact are amply supported by the record and are not clearly erroneous. We agree with the military judge's finding that the statements at issue had no impact on the appellant's trial. Additionally, the military judge allowed broad voir dire on this subject and voiced a willingness to grant challenges liberally against any member who might have been affected by any of the statements at issue. An objective, disinterested, reasonable member of the public, fully informed of all the facts and circumstances, would not harbor a significant doubt about the fairness of the appellant's court-martial proceeding. *See United States v. Lewis*, 63 M.J. 405, 415 (C.A.A.F. 2006).

*Exclusion of Evidence*

Trial defense counsel sought to admit evidence that A1C BS reported being sexually assaulted by another man nine months after the events that gave rise to this case. The military judge excluded the proffered evidence, finding that it occurred after A1C BS made her report concerning the appellant, the appellant was not present or in any way involved in the other incident, and there were insufficient similarities (such as alcohol consumption) between the incidents.[3]

We review a military judge's decision to admit or exclude evidence under Mil. R. Evid. 412 for an abuse of discretion. *United States v. Ellerbrock*, 70 M.J. 314, 317 (C.A.A.F. 2011). We may not uphold a military judge's decision when "the findings of fact are clearly erroneous or [when] the military judge's decision is influenced by an erroneous view of the law." *United States v. Hollis*, 57 M.J. 74, 79 (C.A.A.F. 2002) (citation omitted). Findings of fact are reviewed under a clearly erroneous standard and conclusions of law are reviewed de novo. *United States v. Roberts*, 69 M.J. 23, 26 (C.A.A.F. 2010).

As a general rule, evidence of a victim's past sexual behavior is inadmissible in a case involving an alleged sex offense. *See* Mil. R. Evid. 412. "Evidence offered to prove that any alleged victim engaged in other sexual behavior" is "not admissible in any proceeding involving an alleged sexual offense except as provided in [Mil. R. Evid. 412] subdivisions (b) and (c)." Mil. R. Evid. 412(a). Subdivision (b) provides three

---

[3] Conversely, the military judge admitted evidence that A1C BS reported that she had been sexually assaulted the evening before the incident involving the appellant.

exceptions to this general rule of exclusion. The third of these exceptions permits the admission of "evidence the exclusion of which would violate the constitutional rights of the accused." Mil. R. Evid. 412(b)(1)(C).

Evidence may be admitted under Mil. R. Evid. 412(b)(1)(C) when it is relevant, material, and its probative value outweighs the dangers of unfair prejudice. *See* Mil. R. Evid. 402 and 403; *United States v. Gaddis*, 70 M.J. 248, 255 (C.A.A.F. 2011). Relevant evidence is any evidence that has "any tendency to make the existence of any fact . . . more probable or less probable than it would be without the evidence." Mil. R. Evid. 401. The evidence must also be material, which requires looking at "'the importance of the issue for which the evidence was offered in relation to the other issues in th[e] case; the extent to which th[e] issue is in dispute; and the nature of the other evidence in the case pertaining to th[at] issue.'" *United States v. Banker*, 60 M.J. 216, 222 (C.A.A.F. 2004) (alterations in the original) (quoting *United States v. Colon-Angueira*, 16 M.J. 20, 26 (C.M.A. 1983)).

The appellant asserts, without elaboration, that A1C BS's subsequent sexual assault is a matter that, "on its face, calls into question [A1C BS's] credibility and her ability to accurately perceive events" that took place with the appellant nine months earlier. We disagree. As did the military judge, we conclude that the incidents were sufficiently distinct in time and nature. The military judge did not abuse her discretion in concluding that admission of this evidence was not constitutionally required.

*Ineffective Assistance of Counsel*

The appellant next argues that his trial defense counsel's permanent change of station (PCS), which occurred prior to the trial, rendered him ineffective. We review claims of ineffective assistance of counsel de novo. *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009). When reviewing such claims, we follow the two-part test outlined by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Our superior court has applied this standard to military courts-martial, noting that "[i]n order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (*citing Strickland*, 466 U.S. at 687).

The law presumes counsel's actions to be appropriate, and we will not second-guess a trial defense counsel's reasonable strategic or tactical decisions. *See United States v. Morgan*, 37 M.J. 407, 410 (C.M.A. 1993). To prevail on a claim of ineffective assistance of counsel, the appellant "must rebut this presumption by pointing out specific errors made by his defense counsel which were unreasonable under prevailing professional norms. The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the

circumstances." *United States v. Scott*, 24 M.J. 186, 188 (C.M.A. 1987) (citation omitted). We need not decide if defense counsel was deficient if the second prong of *Strickland* (prejudice) is not met. *See United States v. Saintaude*, 61 M.J. 175, 183 (C.A.A.F. 2005).

Although the appellant was represented at trial by both Major (Maj) TF and Captain (Capt) BA, he lodges no complaints about Maj TF's representation. The appellant makes several assertions concerning Capt BA which fall into three general categories: the loss of a particular expert witness, decreased communication between the appellant and Capt BA, and Capt BA's decreased interest in the appellant's case. We ordered both trial defense counsel to submit declarations in response to these assertions.

The first complaint is easily dispatched: the expert witness whom the appellant preferred became unavailable when she was arrested for driving while under the influence of alcohol as she entered the Air Force base on the eve of trial. Trial defense counsel's decision not to use an expert witness with a possible alcohol problem—in a court-martial in which alcohol consumption was a central issue—was certainly reasonable under the circumstances. Trial defense counsel successfully obtained a continuance to locate and consult with another expert whom they ultimately used for trial.

The remaining allegations are less easily quantified. While the appellant desired that his counsel communicate more with him, and that his counsel pursue tactics other than those ultimately used at trial, even the appellant himself identifies no specific errors nor whether such errors were unreasonable under prevailing norms. Having reviewed the appellant's and counsels' affidavits, we conclude that the appellant has failed to meet his burden to establish that counsel's performance was deficient.

## *Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court

7                                                            ACM 38484