# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Master Sergeant THOMAS J. FRY
### United States Air Force

## ACM 38687

## 4 February 2016

Sentence adjudged 26 June 2014 by GCM convened at Scott Air Force Base, Illinois. Military Judge: Lynn Watkins (arraignment) and Shaun Speranza.

Approved Sentence: Bad-conduct discharge, confinement for 7 months, reduction to E-4, and a reprimand.

Appellate Counsel for Appellant: Major Thomas A. Smith.

Appellate Counsel for the United States: Captain J. Ronald Steelman III; Major Mary Ellen Payne; and Gerald R. Bruce, Esquire.

Before

MITCHELL, DUBRISKE, and BROWN
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

BROWN, Judge:

At a general court-martial composed of officer members, Appellant was convicted, contrary to his pleas, of three specifications of sexual assault and one specification of abusive sexual contact, in violation of Article 120, UCMJ, 10 U.S.C. § 920. The members sentenced Appellant to a bad-conduct discharge, confinement for seven months, reduction to E-4, and a reprimand. The convening authority approved the sentence as adjudged, except mandatory forfeitures were deferred until action and then waived for six months from the date of action for the benefit of Appellant's dependents.

On appeal, Appellant raises two issues: (1) that it was constitutionally required under Mil. R. Evid. 412(b)(1)(C) for the defense to introduce evidence that the victim engaged in consensual, unrelated heterosexual sexual contact two years earlier to rebut an implied impossibility of consent based on her homosexual orientation, and (2) that the staff judge advocate (SJA) incorrectly relied on evidence not admitted at trial when concluding in the staff judge advocate's recommendation (SJAR) that the evidence was legally sufficient. We disagree and affirm the findings and sentence.

*Background*

Appellant was a Master Sergeant and former section chief of Senior Airman (SrA) DR. In 2013, they were both reassigned to Scott Air Force Base, Illinois. In October 2013, about a month after SrA DR arrived at Scott Air Force Base, Appellant invited her to his on-base house to socialize with him and his then-pregnant wife. Appellant's son was also at the house.

During the course of the evening, the group watched a movie and ate pizza. Appellant and SrA DR drank alcohol. The pre-arranged plan was for SrA DR to sleep in the guest bedroom. Through the course of the evening, SrA DR had approximately three and a half drinks that consisted of a mix of vodka and an energy drink. At some point, Appellant's son and wife went to their bedrooms to sleep. Appellant and SrA DR stayed up talking until approximately 0100 or 0130 when SrA DR realized that she was intoxicated and sleepy.

Appellant escorted SrA DR to the guest bedroom, turned off the lights, and closed the door behind him as he left. SrA DR testified that the next thing she recalled was waking up to Appellant on top of her having sex. SrA DR had her bra on, but one leg of her pants was off and her underwear was pulled down on the side. SrA DR testified that, when she awoke, she was confused and just lay there. Appellant, at some point, stopped having sex with her and rolled off her. Appellant got on top of her a second time and again began having sex with SrA DR. Afterward, Appellant placed his fingers into SrA DR's vagina. SrA DR also recalled Appellant kissing her on the lips. SrA DR testified that she never told Appellant that she wanted to engage in sexual activity with him and that she never wanted it to occur. These incidents resulted in the charges in this case.

After the incident, Appellant left the guest room. SrA DR then texted her girlfriend, Ms. MB, and told her that she woke up to Appellant having sex with her. At the time of the incident, SrA DR was in a romantic, same-sex relationship with Ms. MB. SrA DR collected her belongings and left Appellant's house in the middle of the night to return home.

The trial defense counsel filed a timely motion to admit evidence under Mil. R. Evid. 412. The defense specifically sought to question SrA DR about a consensual, heterosexual relationship two years prior to the charged offenses. The defense explained that the purpose of these questions would be to rebut any implication by the prosecution that SrA DR would be less likely to consent to a sexual act with a male because of her sexual orientation. On appeal, Appellant challenges the military judge's decision to suppress this evidence.

Appellant now asserts this evidence was necessary because the Government introduced SrA DR's sexual orientation into the trial in several ways. On two occasions, Ms. MB was referred to as SrA DR's girlfriend. In the opening statement, trial counsel told the members that they would hear that, immediately after the offenses, SrA DR texted "her girlfriend" about what happened. Later, during SrA DR's testimony, in response to whether she called anyone as she left Appellant's house after the attack, SrA DR said, "Yes, I had been texting and calling my girlfriend [Ms. MB]." There were no additional questions, comments, or discussions about the nature of SrA DR's relationship with Ms. MB, or what the term "girlfriend" meant.

In addition, the Government offered into evidence, without defense objection or request for redaction, a photograph of SrA DR's phone screen that displayed text messages between SrA DR and Ms. MB shortly after the alleged incidents. At the top of the exhibit was a concluding sentence from a prior text conversation that ended with the phrase "choice to date a woman."[1]

During SrA DR's testimony, she testified that she and Ms. MB were texting each other throughout the night and identified the exhibit as containing text messages between her and Ms. MB. There was no testimony or discussion regarding the context of the prior text conversation that ended with, "choice to date a woman." At the conclusion of her direct testimony, the Government provided this exhibit to the members for their review.

After the exhibit was provided to the members, the defense argued that the two references to "girlfriend" and the "choice to date a woman" text opened the door to SrA DR's sexual predisposition. This purportedly made it necessary for the defense to question SrA DR about her past sexual relationships with men so as to "rebut the presumption that . . . because she's a lesbian she would not engage in heterosexual sexual activity." The defense explained the purpose of this questioning as follows:

---

[1] Appellant's counsel assert that, although the line was mostly blocked, it is possible to decipher the full sentence as, "He doesn't understand my choice to date a woman." From reviewing the original exhibit, this court determined that such an interpretation, while possible, was neither clear nor easily identifiable. Regardless, this is not critical to the court's resolution of this issue.

The Government created a presumption by putting the evidence out there, by opening up—putting [SrA DR's] sexuality into play in this court. Her predisposition of sexuality and that comes with a presumption that if she has a girlfriend she is a lesbian. And that presumption is correct and that presumption must be rebutted at some point or this witness is improperly bolstered.

The military judge determined that questions regarding Ms. DR's prior sexual behavior with another male were inadmissible under Mil. R. Evid. 412. The military judge concluded that the exclusion of this evidence did not violate Appellant's constitutional rights, that any probative value was substantially outweighed by the danger of unfair prejudice, that the evidence was only marginally relevant, and that it would "infuse the fact-finding process with the sexual innuendo that [Mil. R. Evid.] 412 seeks to prevent." In reaching this conclusion, the military judge reasoned that the use of the word "girlfriend" did not have a sexual connotation as the term is often used to describe platonic, non-sexual, female friendships. As to the "choice to date a woman" portion of the text message, the military judge noted that the phrase was written by Ms. MB rather than SrA DR, and there was no context for the members to make any assumptions about what it meant.

"We review the military judge's ruling on whether to exclude evidence pursuant to [Mil. R. Evid.] 412 for an abuse of discretion. Findings of fact are reviewed under a clearly erroneous standard and conclusions of law are reviewed de novo." *United States v. Ellerbrock*, 70 M.J. 314, 317 (C.A.A.F. 2011) (citation omitted).

Under Mil. R. Evid. 412, evidence offered by the accused to show that the alleged victim engaged in other sexual behavior is inadmissible, with three limited exceptions. The third exception states that the evidence is admissible if "the exclusion of [it] would violate the constitutional rights of the accused." Mil. R. Evid. 412(b)(1)(C). If there is a theory of admissibility under one of the exceptions, the military judge, before admitting the evidence, must conduct a balancing test as outlined in Mil. R. Evid. 412(c)(3) and clarified by *United States v. Gaddis*, 70 M.J. 248, 250 (C.A.A.F. 2011).

The test is whether the evidence is "relevant, material, and [if] the probative value of the evidence outweighs the dangers of unfair prejudice." *Ellerbrock*, 70 M.J. at 318. Relevant evidence is any evidence that has "any tendency to make the existence of any fact . . . more probable or less probable than it would be without the evidence." Mil. R. Evid. 401. Evidence is material if it is "of consequence to the determination of appellant's guilt." *United States v. Dorsey*, 16 M.J. 1, 6 (C.M.A. 1983) (citations and internal quotation marks omitted).

> In determining whether evidence is of consequence to the determination of appellant's guilt, we consider the importance of the issue for which the evidence was offered in relation to the other issues in this case; the extent to which this issue is in dispute; and the nature of the other evidence in the case pertaining to the issue.

*United States v. Smith*, 68 M.J. 445, 448 (C.A.A.F. 2010) (quoting *Dorsey*, 16 M.J. at 6) (internal quotation marks omitted).

If evidence is relevant and material, it must be admitted where its probative value outweighs the dangers of unfair prejudice. *See* Mil. R. Evid. 412(c)(3). "Those dangers include concerns about 'harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Ellerbrock*, 70 M.J. at 319 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). If the evidence survives the inquiry, a final consideration is whether the evidence in the record supports the inference on which the moving party is relying. *Id.*

Mil. R. Evid. 412 "is intended to protect the privacy of victims of sexual assault while at the same time protecting the constitutional right of an accused to a fair trial through his right to put on a defense." *Id.* at 322 (Baker, J., dissenting). This right necessarily includes the ability to cross-examine and to impeach or discredit a witness. The cross-examination, however, need not be "in whatever way, and to whatever extent, the defense might wish," and the military judge may limit the scope of such cross-examination when its relevance is outweighed by concerns of harassment, prejudice, or confusion of the issues. *Ellerbrock*, 70 M.J. at 318 (quoting *Van Arsdall*, 475 U.S. at 679) (internal quotation marks omitted). "But no evidentiary rule can deny an accused of a fair trial or all opportunities for effective cross-examination." *Id.*

An alleged victim's sexual orientation, standing alone, is not relevant under Mil. R. Evid. 412. *See United States v. Grant*, 49 M.J. 295, 297 (C.A.A.F. 1998). In certain situations, however, an alleged victim's sexual orientation could become relevant and material so that its exclusion would violate the constitutional rights of an accused. The issue before us is whether this is such a case. We conclude it is not. The military judge did not abuse his discretion in excluding this evidence under the facts and circumstances of this case.

Appellant urges this court to adopt the rationale used by the Navy-Marine Corps Court of Criminal Appeals in *United States v. Villanueva*, NMCCA 201400212 (N.M. Ct. Crim. App. 19 March 2015) (unpub. op.). There, the Navy court concluded that when the government uses sexual orientation in a way that implies the impossibility of consent, or the impossibility of reasonable mistake of fact as to consent, the defense must be allowed to rebut that inference when to do otherwise would deny an accused the ability to mount a

defense.  *Id*. unpub. op. at  6–7.  As to this general proposition, this court does not disagree, and such a conclusion does not constitute a novel legal concept.

In *Villanueva*, a male accused was alleged to have forcibly sodomized another male military member victim while that member was intoxicated.  *Id*. unpub. op. at  1–2. The victim testified at trial that he was not gay and that he had previously told the accused he was not gay.  *Id*. unpub. op. at  3–4.  After the military judge prohibited the defense from questioning the victim regarding statements that could be interpreted as having some interest in homosexuality, trial counsel repeatedly relied on the victim's assertion that he was not gay as a reason that the victim would not have consented to homosexual conduct.  *Id*.  Trial counsel affirmatively referenced in the opening statement that the victim was a heterosexual, and argued that the accused could not have been reasonably mistaken as to consent because the victim told the accused he was not gay. *Id*.  In this situation, the Navy court concluded that contrary information about the victim's sexual orientation impacted the credibility of the witness and could have impacted whether the accused was reasonably mistaken as to consent.  *Id*. unpub. op. at 6–7.  Under the facts of that case, exclusion of this information impacted the defense's ability to mount a defense and rebut the inferences and arguments that the government and the victim were affirmatively putting forward as an issue in the trial.  *Id.*

In this case, however, the Government did not use sexual orientation in such a manner.  Unlike *Villanueva*, the Government's theory of the case did not rely in whole, or in part, on SrA DR's sexual orientation or the nature of the relationship between her and Ms. MB.  Trial counsel never referenced SrA DR's sexual orientation nor argued that SrA DR would have been less likely to consent to the sexual activity with Appellant because of her sexual orientation or her relationship with Ms. MB.  There was no proffer from the defense that SrA DR told Appellant anything that evening about prior sexual activity that could have reasonably contributed to a reasonable mistake of fact claim as to consent.

The three isolated references that Appellant clings to are not sufficient to raise impossibility of consent based on SrA DR's sexual orientation.  The military judge was correct in identifying that the term "girlfriend," as used here, is often used to signify a platonic, rather than sexually intimate, relationship.  The text message that ended with "choice to date a woman" was from Ms. MB, not SrA DR, and did not contain enough context for the members to draw any conclusions about its meaning.

This is not a case of the Government smuggling in veiled references of a victim's sexual orientation with the hope or intent that the members would rely on it in deliberations.  The Government's theory was relatively straight forward:  SrA DR and Appellant were nothing more than friends in the context of a professional working relationship, SrA DR did not have any interest in engaging in sexual activity with Appellant, and SrA DR did not behave in any way toward Appellant that night that would

make him reasonably believe otherwise. In short, the Government neither intentionally, nor inadvertently, used SrA DR's sexual orientation to argue that she was less likely to consent to sexual activity with Appellant.

Furthermore, regardless of the intent of the prosecution, the record does not support that the members were focused in any way on SrA DR's sexual orientation. Although the members asked several questions to SrA DR about her alcohol use, they never questioned her or Ms. MB about the nature of their relationship or what precipitated the text conversation that ended with the phrase "choice to date a woman." The three references relied upon by Appellant were, at most, ambiguous. If the members believed that such ambiguous statements were critical to their resolution of the case, they presumably would have included that line of questioning amongst the other questions they asked the witnesses. The members' silence speaks volumes and reinforces the military judge's conclusions that the members would be unlikely to draw such conclusions from the evidence as presented.

Even if one assumes, for the purposes of argument, that the three references were sufficient to imply that that SrA DR and Ms. MB were in an intimate relationship, it was still not an abuse of discretion for the military judge to exclude testimony about SrA DR's unrelated, heterosexual relationship two years earlier. Even if SrA DR were in an intimate relationship, there was absolutely nothing to suggest to the members that SrA DR and Ms. MB were in an exclusive relationship or that SrA DR was a lesbian rather than a bi-sexual. Admittedly, if SrA DR or Ms. MB would have testified during findings that they were in an exclusive, lesbian relationship and that, therefore, SrA DR would never have consented to sexual activity with Appellant, the analysis would be very different. That did not happen. Here, unlike *Villanueva*, the Government did not use the victim's sexual orientation as a sword against Appellant that he was constitutionally entitled to rebut. The military judge correctly applied the law, and it was not an abuse of discretion to exclude the evidence under Mil. R. Evid. 412.

*SJAR Error*

The SJAR advised the convening authority that the primary evidence in this case consisted of "witness testimony, documentary and scientific evidence, photographic evidence, and *a text message between the Accused and the victim*." (Emphasis added). The SJA then advised the convening authority that he was satisfied that the evidence used to support the conviction was legally sufficient. The SJAR was served on the defense and the defense did not object to the SJAR or raise any specific legal errors.

The prosecution never offered into evidence a text message between Appellant and the victim, as referenced in the SJAR. Consequently, such a text message could not be a basis for the conviction. There was a text message, however, that the prosecution did use at trial—the previously described text messages from SrA DR to Ms. MB

immediately following the sexual assault. It was this text message between SrA DR and Ms. MB, where SrA DR claimed she awoke to Appellant having sex with her, that trial counsel used at trial.

Nevertheless, Appellant suggests this reference is more than a mere typographical error, as there were also text messages between Appellant and SrA DR a week following the sexual assaults. Those text messages were included in the Article 32, UCMJ, 10 U.S.C. § 832, report but not offered into evidence at trial. In those messages, SrA DR confronted Appellant about what happened that night. In response, Appellant claimed he had little memory of what happened that night, other than claiming that he realized afterwards that he had mistaken SrA DR for his wife. The court reviews allegations of improper completion of post-trial processing de novo. *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000). Where consideration of the sufficiency of the trial evidence of guilt is undertaken, that consideration must be limited to the trial evidence. *United States v. Drayton*, 40 M.J. 447, 451 (C.M.A. 1994). If defense counsel does not make a timely comment on an error or omission in the SJA's recommendation, that error is waived unless it is prejudicial under a plain error analysis. *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005). To avoid waiver based upon plain error, the appellant must demonstrate three things: "(1) There was an error; (2) it was plain or obvious, and (3) the error materially prejudiced a substantial right." *Id*. (quoting *Kho*, 54 M.J. at 65).

"Because of the highly discretionary nature of the convening authority's clemency power, the threshold for showing [post-trial] prejudice is low." *United States v. Lee*, 52 M.J. 51, 53 (C.A.A.F. 1999). Only a colorable showing of possible prejudice is necessary. *Id*. Nevertheless, an error in the SJAR "does not result in an automatic return by the appellate court of the case to the convening authority." *United States v. Green*, 44 M.J. 93, 95 (C.A.A.F. 1996). "Instead, an appellate court may determine if the accused has been prejudiced by testing whether the alleged error has any merit and would have led to a favorable recommendation by the SJA or corrective action by the convening authority." *Id*.

Neither in the clemency submission, nor in Appellant's assignment of errors to this court, does he attack the legal sufficiency of his conviction. Appellant's only request in clemency was a reduction in confinement to allow him to return home to his family.[2] Although the convening authority elected not to reduce Appellant's confinement, there is nothing to suggest that the text message between Appellant and SrA DR would have had any bearing on that decision. The SJAR did not recite the contents of that text message—or describe any of the evidence—in detail. Even if the convening authority would have affirmatively sought out the referenced email in the record of trial, it would have provided no additional basis to question the legal sufficiency of the conviction. It would also have provided no additional basis to either grant or deny Appellant's request for a

---

[2] Automatic forfeitures were both deferred until action and waived for six months from the date of action.

reduction in confinement. Appellant, in that text message, merely repeated his claims that he had little to no recollection of what occurred that night.

Under the facts of this case, we find that Appellant forfeited this issue by failing to raise the error in clemency, and the error, regardless of whether it was plain and obvious, did not materially prejudice a substantial right of Appellant.

*Promulgating Order Error*

Although not raised by the parties, we note the report of result of trial memorandum attached to the SJAR is erroneous in that it incorrectly states that Appellant pleaded not guilty to Specification 3 of the Charge. Appellant instead deferred entry of pleas prior to the military judge dismissing the specification as a lesser-included offense of another charged offense. This was error. *See* R.C.M. 1106(d)(3); Air Force Instruction (AFI) 51-201, *Administration of Military Justice*, ¶ 9.2.1 (6 June 2013). Additionally, the initial court-martial promulgating order (CMO) contained the same error. *See* R.C.M. 1114(c)(1); AFI 51-201, ¶ 10.8.2.2. Although we find Appellant is not entitled to additional post-trial processing given he suffered no material prejudice from the error, we direct completion of a corrected CMO to properly reflect that Appellant did not enter a plea to Specification 3 of the Charge.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

LAQUITTA J. SMITH
Appellate Paralegal Specialist